741 A.2d 495

Terry BRYANT

v.

STATE of Maryland.

**No. 1228, September Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 1, 1999.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Celia A. Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SONNER, and JOHN F. McAULIFFE, (retired, specially assigned) JJ.

JOHN F. McAULIFFE, Judge, Retired, Specially Assigned.

We shall reverse the convictions in this case and remand for a new trial because of improper argument by the prosecutor that was not corrected by the trial judge.

At about 7:30 p.m. on September 18, 1997, in the 2900 block of Parkwood Drive in Baltimore City, someone fired eight rounds from a .45–caliber handgun, fatally injuring Donte Walters and injuring Eric Brown. According to the State's principal witness, Florence Savage Winston, Messrs. Walters and Brown were walking south on Parkwood Drive when they were shot. Ms. Winston testified that the area was frequented by a number of persons who bought various kinds of drugs from dealers on the street. She was seated on the front steps of 2906 Parkwood Drive when she first heard people yelling, "44," which, she explained, is the same as "5–0" and means, "Police in the area, stop what you are doing." She next heard a man saying, "Heads up," which, she explained, meant that "stick-up boys," persons who rob drug dealers, were in the area. It was at this time that Walters and Brown were walking in the area. She saw them stop and talk to someone, and then proceed past where she was seated.

When Walters and Brown were in front of 2900 Parkwood Drive, shots were fired from diagonally across the street. Ms. Winston said it was dark, but she could see the muzzle flashes and knew the bullets were coming close to where she was seated. She saw both victims drop to the ground, before one of them got up and walked back in the direction from which he had come and around the corner on Omar Avenue. She said that man then came back and lay beside the other victim.

Ms. Winston testified she could not see who was firing the gun, but she did see a blue shirt with a design on it. She said she then went inside 2906 Parkwood Drive for a few minutes before returning to the steps to watch the activity that followed. The investigating police officers asked her that night if she had seen anything and she told them she had not.

At the time of this occurrence, Ms. Winston was a self-described "dope fiend," selling crack cocaine at the Parkwood Drive location to support her habit. She said that on September 18, 1997, "I was either high or comfortable but I was under the influence...."

Ms. Winston further testified that she saw the defendant, whom she knew well but only by his first name, the next morning when she returned to the steps on Parkwood Drive. She said the defendant "looked nervous" and was asking her questions about what she might have seen the night before, when it occurred to her that he may have been the shooter. She said she accused him and cursed him for shooting in the area where she was sitting, and he said he had not seen her there and would not have been shooting in that direction if he had. Ms. Winston said that when she had seen the defendant on the day of the shooting but before the shooting, he was wearing a blue shirt with a design on it, cut-off blue jeans shorts and "brand new brown butter tims (Timberland boots)." On the following morning when she spoke with the defendant, he had on the shorts and boots, but not the shirt. Ms. Winston testified that the defendant called her from central booking on several occasions after his arrest, and during one conversation told her that he had nothing to do with the shooting and he was "just playing with her" when he spoke earlier of shooting in her direction.

On September 21, Ms. Winston called the police and talked to Detective Bieling. She identified herself only as "Florence," said she was a witness to the shooting, left her pager number, and asked that the detective in charge of the investigation contact her. Detective Bieling wrote a note to Detective Requer providing this information and stating, "She wants to deal away a theft charge." At that time, Ms. Winston was on probation after serving two years of a five-year sentence for drug dealing and was awaiting trial on a separate theft charge and a charge of violation of probation.

Ms. Winston testified that she had several reasons for contacting the police: she was angry with the defendant for

endangering her and for killing a person who was not a "stick-up guy" but was just in the neighborhood to buy drugs; and, that she wanted police help with her pending charges so that she would not be sent back to jail. She said she asked to speak to the investigating detective only after finding out from the police that one of the victims had died.[1]

Detective Requer testified that he ultimately contacted Ms. Winston and interviewed her on September 23. He said she related what she had seen and what the defendant had told her. He said that she also drew a diagram of the scene and annotated the diagram with statements of what had occurred at various places. He said that her description of the location from which the shots were fired matched the location where cartridge casings were found, and that her description of the walking path taken by one of the victims after the shooting coincided with a blood trail the police had found on the night of the shooting.

Detective Requer testified that he did not initially receive Detective Bieling's note of September 21, but had talked with him. He denied that Ms. Winston had discussed her pending charges with him. He said, however, that at the request of Ms. Winston's attorney he did go to the District Court in Catonsville and speak with the prosecutor handling Ms. Winston's theft charge to confirm that she was a witness in a pending murder case. Additionally, at the request of Ms. Winston's attorney he thereafter met with Judge Themelis of the Baltimore City Circuit Court and the parties in connection with the pending violation of probation hearing, and confirmed Ms. Winston's status as a witness in the present case. At the time of the trial in this case, the theft charge had been placed on the "stet" or inactive docket, and the violation of probation charge was pending.

At trial, and during the direct testimony of Ms. Winston, the State sought to introduce an enlarged copy of the annotated

---

1. Detective Bieling's note was written at 8:35 p.m. on September 21. Detective Requer testified the victim did not die until after the time shown on the note.

drawing Ms. Winston had made at the time she was interviewed by Detective Requer. The diagram was admitted over the objection of the defendant, and this ruling is the basis for his first assignment of error on appeal.

During closing arguments, the prosecutor was permitted, over objection, to comment on the defendant's courtroom demeanor during the testimony of Ms. Winston. This constitutes the defendant's second assignment of error, which we shall consider first.

The defendant was convicted of first degree murder, attempted first degree murder, and two counts of using a handgun in the commission of a felony. He was sentenced to life imprisonment on the murder conviction and concurrent sentences were imposed on the remaining counts.

### Prosecutor's Closing Argument

During closing argument, the prosecutor acknowledged that one of Ms. Winston's motives in going to the police was to obtain the State's assistance with her pending charges, and further acknowledged that Ms. Winston's lifestyle was not exemplary. The prosecutor then attempted to demonstrate corroboration of Ms. Winston's testimony. She argued:

But how else do you know that Florence was telling the truth? You were able to observe her demeanor. Florence Savage [Winston] has had a rough time. She's had a rough life, and she used drugs. I told you that from the beginning.

And she's been convicted of selling drugs, she wasn't trying to hide anything. She is who she is, and [s]he told you how long she had been using drugs. And if she wasn't living the type of life that she lived, she wouldn't have been out there in the 2900 block of Parkwood on September 17–18, excuse me. She wouldn't have been out there. It's because she lived that lifestyle, that's why she was out there.

So don't reward the defendant because he chooses to commit a crime in a high drug area where you're not going

to find people such as yourselves, and you're not going to find people of the clergy and rabbis and Mary Poppins. You're going to find people that are involved in that drug life. So don't reward him because Florence Savage was part of that drug life.

There is so much evidence that corroborates what she told you. When I spoke about her demeanor when she testified, and how she answered [defense counsel's] questions, did you notice the defendant's demeanor when she testified, the way he kept looking down and couldn't look at her? She looked in his eyes several times.

DEFENSE COUNSEL: Objection, Your Honor.

THE COURT: Overruled.

THE PROSECUTOR: You observed that, members of the jury, you were sitting here. We all saw it. He couldn't sit up and look her in the eye because he knew she was telling the truth. He knew she was telling the truth.

The defendant argues that the prosecutor's argument concerning courtroom demeanor of the defendant who did not testify constitutes reversible error. The State maintains that the prosecutor's comment was not error, and if error, it was not sufficiently prejudicial to warrant reversal.

■ Argument that asks the jury to consider the demeanor of a witness when testifying is proper and is consistent with the jury instruction given in this case to consider "the witness's behavior on the stand and way of testifying; did the witness appear to be telling the truth." Argument that comments on the courtroom demeanor of a defendant who elects not to testify is a different matter. Courts that have considered this question have reached different conclusions about when, if ever, comment on a defendant's courtroom demeanor is proper. In *State v. Rivera*, 253 N.J.Super. 598, 602 A.2d 775 (1992), the court held that when a defendant engages in "testimonial behavior before a jury" by injecting unsworn comments into a trial by word, gestures, display of emotion, or other demeanor intended to influence the jury, the prosecutor may, with advance approval of the court and the making of a

record of the defendant's conduct, make a limited argument noting the fact of the behavior and that the comment or demeanor should not be considered by the jury. The court further stated, however, a prosecutor may not comment upon the failure of a defendant to act in a particular way during a trial. *Id.* at 777. *See also State v. Johnson,* 120 N.J. 263, 576 A.2d 834, 851–52 (1990) (improper for prosecution to argue that defendant failed to make eye contact with jurors during trial.)

In *United States v. Wright,* 160 U.S.App.D.C. 57, 489 F.2d 1181, 1186 (1973), the court held that the courtroom behavior of the defendant off the witness stand was not in any sense relevant to the question of guilt or innocence. In *United States v. Pearson,* 746 F.2d 787, 796 (11th Cir.1984), the prosecutor argued:

> You saw him sitting there in trial. Did you see his leg going up and down? He is nervous. (Appellant's objection overruled.) You saw how nervous he was sitting there. Do you think he is afraid?

The court stated:

> It is also clear that the defendant's behavior off the witness stand in this instance was not evidence subject to comment. *United States v. Wright,* 489 F.2d 1181 (D.C.Cir.1973). In overruling Petracelli's objection and in failing to give a curative instruction, the court, in effect, gave the jury an incorrect impression that the appellant's behavior off the witness stand was evidence in this instance, upon which the prosecutor was free to comment.

In *United States v. Carroll,* 678 F.2d 1208, 1209–10 (4th Cir.1982), the court held that argument of a prosecutor describing courtroom behavior of a non-testifying defendant and suggesting that the jury consider the behavior as evidence of guilt was error. *See also United States v. Leal,* 75 F.3d 219, 225–26 (6th Cir.1996) (government concedes misconduct of prosecutor in commenting on courtroom conduct of defendant); *United States v. Schuler,* 813 F.2d 978, 980–82 (9th Cir.1987) (in the absence of a curative instruction from the

court, a prosecutor's comments on a defendant's off-the-stand behavior constitutes a violation of the due process clause of the Fifth Amendment).

The Supreme Court of Delaware, in *Hughes v. State,* 437 A.2d 559 (Del.Supr.1981), held improper the prosecutor's comments that characterized a non-testifying defendant's courtroom demeanor as unemotional, unfeeling, and without remorse.

> In our view, the courtroom demeanor of a defendant who has not testified is irrelevant. His demeanor has not been entered into evidence and, therefore, comment is beyond the scope of legitimate summary. *See generally, Borodine v. Douzanis,* 1 Cir., 592 F.2d 1202, 1210–11 (1979); *Villacres v. United States,* D.C. Ct.App., 357 A.2d 423, 426 n. 4 (1976); *State v. Smith,* Mo. Ct.App., 588 S.W.2d 27, 32 (1979). Moreover the practice is pregnant with potential prejudice. A guilty verdict must be based upon the evidence and the reasonable inferences therefrom, not on an irrational response which may be triggered if the prosecution unfairly strikes an emotion in the jury.

*Id.* at 572. *See also Pope v. Wainwright,* 496 So.2d 798, 802 (Fla.1986) (comments on a defendant's demeanor off the witness stand clearly improper); *Blue v. State,* 674 So.2d 1184, 1213–15 (Miss.1996) (error for prosecutor to comment on nontestifying defendant's demeanor and appearance during trial); *People v. Garcia,* 160 Cal.App.3d 82, 206 Cal.Rptr. 468, 472–75 (1984) (prosecutor's references to defendant's courtroom behavior was improper).

On the other hand, the Supreme Judicial Court of Massachusetts has held that a prosecutor's comment on the defendant's squirming, smirking, and laughing during trial was fair comment and in context did not suggest that the prosecutor had knowledge the jury did not share. *Commonwealth v. Smith,* 387 Mass. 900, 444 N.E.2d 374, 380 (1983). That court has said, however, that a suggestion by the prosecutor that normal courtroom behavior betrays consciousness of guilt is improper. *Commonwealth v. Valliere,* 366 Mass. 479, 321

N.E.2d 625, 635 (1974). And, *see Commonwealth v. Pullum,* 22 Mass.App.Ct. 485, 494 N.E.2d 1355, 1358 (1986).

The Supreme Court of North Carolina found no error in a prosecutor's comments on the courtroom demeanor of the defendant, holding that such remarks were rooted in the evidence and that the demeanor of the defendant was before the jury at all times. *State v. Brown,* 320 N.C. 179, 358 S.E.2d 1, 15 (1987), *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987). *See also State v. Myers,* 299 N.C. 671, 263 S.E.2d 768, 773–74 (1980); *Wherry v. State,* 402 So.2d 1130, 1133 (Ala.Cr.App.1981) (conduct of the accused or the accused's demeanor during the trial is a proper subject of comment, at least when insanity is raised as a defense).

In *Campbell v. State,* 65 Md.App. 498, 501 A.2d 111 (1985), this Court considered a claim of error arising from the prose-cutor's reference to persistent crying by a defendant who had testified in the case. The Court said:

> Generally, it has been held improper to remark on the personal appearance of an accused, except where identity is in issue or where the remark is with respect to the accused's appearance while testifying. . . . The circumstances and the nature and language of the comment, however, may render the remark an exception to the general rule.

*Id.* at 505, 501 A.2d 111 (citation omitted). The Court held that, "While the State's comments were inappropriate, they were not so improper as to mandate reversal," and that it was "proper for the State to posit before the jury any plausible inferences **derived from her presence on the stand,** including evidence of demeanor." *Id.* (emphasis added). Noting again that the comments of the prosecutor "addressed the personal behavior of an accused who took the stand," and apparently drawing a distinction between argument that is merely "inap-propriate" and that which is "improper," the Court concluded that the trial judge "did not err in permitting this line of argument before the jury." *Id.* at 506, 501 A.2d 111. Finally, the Court concluded that even if the remarks were improper,

the error was not prejudicial to the defendant and would not warrant reversal.

■ Turning to the case before us, we conclude that the argument of the prosecutor concerning the alleged failure of this defendant to look at a witness and the inference of guilt that should be drawn from that conduct was improper. The trial judge therefore erred in failing to sustain the defendant's timely objection.

The defendant in this case did not testify, and the State's argument related only to this courtroom conduct. Nowhere in the record is there to be found any reference to the alleged conduct of the accused. The prosecutor was arguing a fact not in evidence, and compounding that by adding her personal assurance that the alleged conduct occurred by saying, "We all saw it." [2] The argument related to conduct of the accused that was entirely passive—his alleged failure to "look [the witness] in the eye." The argument was not, therefore, a comment on intentional conduct of an accused calculated to influence the jury. Moreover, the prosecutor argued her conclusion that the defendant's failure to "look her in the eye" was evidence of guilt—"He knew she was telling the truth."— a questionable inference at best. There may be any number of reasons why a defendant will not fix his or her gaze upon a witness, including a possible earlier instruction by defense counsel to avoid any possible implication that the defendant is attempting to intimidate or "stare down" a witness. The prosecutor should have focused on evidence that was before the jury, which may include fair comment on the demeanor of witnesses while they are on the stand, but which will ordinarily not include comments on the courtroom demeanor of the defendant.

In *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974), the Court of Appeals noted that counsel may "make any comment or argument that is warranted by the evidence proved or

---

2. It is of some interest to note that when the prosecutor asked this witness to identify the defendant, she replied, "Yes, he's sitting right here looking at me."

inferences therefrom" and that the prosecutor is free "to comment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his comments...." *Id.* at 412, 326 A.2d 707. We do not understand this statement ordinarily to condone comments of the prosecutor on the passive courtroom demeanor of a non-testifying defendant. Those who may tend to read the language of *Wilhelm* too broadly would do well to consider the more recent cases of *Hill v. State,* 355 Md. 206, 734 A.2d 199 (1999); *White v. State,* 125 Md.App. 684, 726 A.2d 858 (1999); and *Holmes v. State,* 119 Md.App. 518, 527, 705 A.2d 118 (1998). *See also Degren v. State,* 352 Md. 400, 432 n. 14, 722 A.2d 887 (1999).

 Finding error, we turn to the more difficult consideration of whether the error is harmless under all the circumstances of this case. In the heat of argument in our adversarial system, prosecutors may occasionally step over the line, and it is not every error that will justify a reversal of the conviction. *Degren v. State, supra,* 352 Md. at 430–31, 722 A.2d 887. Indeed, a number of the cases cited above that found error in the prosecutor's argument also found that the error was harmless. An accused "has a constitutional right to a 'fair trial' but not necessarily to that seldom experienced rarity, a perfect trial." *State v. Babb,* 258 Md. 547, 552, 267 A.2d 190, 193 (1970).

In this State, the law of harmless error is found in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976) and its progeny. The Court of Appeals in *Dorsey* found "no sound reason for drawing a distinction between the treatment of those errors which are of constitutional dimension and those other evidentiary, or procedural, errors which may have been committed during a trial."[3] *Id.* at 657, 350 A.2d 665. The Court stated:

---

3. There are, of course, certain errors of constitutional dimension involving "structural defects in the constitution of the trial mechanism" that are not subject to a harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 306–12, 111 S.Ct. 1246, 113 L.Ed.2d 302 (opinion of Rehnquist, C.J.) (1991).

We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Id.* at 659, 350 A.2d 665. More recently, *see Jensen v. State,* 355 Md. 692, 708–09, 736 A.2d 307 (1999).

In *Wilhelm, supra,* the Court noted, quoting from *Gaither v. United States,* 413 F.2d 1061, 1079 (D.C.Cir.1969), that in determining whether a prosecutor's remarks constitute reversible error, the following factors should be included in the consideration: 1) the closeness of the case; 2) centrality of the issue which may have been affected by the error; and, 3) any steps the trial court may have taken to mitigate the error.

■ *Closeness of the Case.* This was a close case in that the entire State's case rested on the testimony of a single witness whose credibility was suspect. The State had no weapon, no fingerprints, no confession, and no witness who saw the shooter well enough to make even a tentative identification. The State's principal witness, Ms. Winston, testified she did not see the shooter's face and did not know who had done the shooting until the following day, when the defendant allegedly told her he had fired the shots. The State contends the witness's testimony is corroborated by proof that the defendant called her from central booking on several occasions shortly after his arrest, and on one of those occasions allegedly admitted he had told her earlier that he was the shooter. The State did introduce evidence from a telephone company representative that calls had been made from central booking to Ms. Winston's telephone number at that time, but that evidence does not speak to the content of the conversations. The defendant and Ms. Winston were close friends and it is

clear that the defendant called her to have her facilitate a telephone conversation with the defendant's girlfriend, which she did. Whether the defendant said anything to Ms. Winston about the shooting during one of these conversations is, again, entirely dependent upon whether Ms. Winston is telling the truth or is providing the State with a name for her own purposes in avoiding a return to jail.

*Centrality.* The argument of the State was intended to show consciousness of guilt on the part of the defendant, and therefore went to the heart of the case.

*Curative Action by the Trial Court.* The trial judge took no steps to mitigate the error. Instead, he overruled the defendant's timely objection, thereby suggesting judicial approval of the argument. The State contends that the court cured any possible error by earlier instructions to the jury that they were to consider only evidence consisting of testimony and exhibits and that closing arguments were not evidence. We do not agree that the earlier general instructions were sufficient, particularly in view of the court's actions in overruling the objection of defense counsel.

Viewing the case in its entirety, we are unable to say that the error here was harmless beyond a reasonable doubt.[4]

### Admissibility of the Diagram

As noted above, the defendant also challenges the ruling of the trial court admitting into evidence an annotated diagram prepared by a witness before trial. Part of the argument deals with the sufficiency and explicitness of the objection lodged by defendant's counsel. In view of the full discussion contained in the briefs, we conclude this is a problem unlikely to occur on retrial, and we do not address it.

---

4. There is language in *Campbell v. State, supra,* 65 Md.App. at 506, 501 A.2d 111, that suggests the burden should be upon the defendant to demonstrate unfair prejudice resulting from this type of error. Assuming this is not a mere difference in semantics, we do not agree and we apply the *Dorsey* test to determine whether the error is harmless. *See Johnson v. State,* 325 Md. 511, 520–22, 601 A.2d 1093 (1992).

We note in passing, however, that the annotated diagram contained hearsay assertions, i.e., statements of the witness made before trial while she was not under oath and not subject to cross-examination. The witness did not claim any lack of present memory and the exhibit was therefore not admissible as a recorded recollection under Md. Rule 5–802.1(e). Because there is no contention that the diagram was made before the witness's possible motive to fabricate existed, the statements in the diagram could not be admitted as prior consistent statements under Rule 5–802.1(b). *Holmes v. State,* 350 Md. 412, 422–25, 712 A.2d 554 (1998). Whether, because the witness's statements on the diagram may have some special rebutting force, the diagram would qualify for admissibility under Rule 5–616(c) is a matter not previously raised but which, if deemed appropriate by the State, may be put forward for consideration by the trial judge on retrial. *See Holmes, supra,* 350 Md. at 426–31, 712 A.2d 554.

### Conclusion

For the reasons previously stated, we reverse the judgment below and remand the case for a new trial.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED FOR A NEW TRIAL.**

**COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**