**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1606

September Term, 2015
_____

LARRY JACKSON

v.

STATE OF MARYLAND

_____

Krauser, C. J.,
Woodward,
Salmon, James P.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Woodward, J.

_____

Filed:    October 26, 2016

A jury in the Circuit Court for Baltimore City convicted Larry Jackson, appellant, of second-degree assault[1] following a domestic dispute at the home occupied by his girlfriend and her family. The court sentenced appellant to a term of imprisonment of ten years. Appellant presents three questions on appeal:

> 1. Did the court err in admitting other crimes evidence and other irrelevant and unfairly prejudicial evidence?
>
> 2. Did the court abuse its discretion in denying appellant's mistrial motion?
>
> 3. Did the court improperly consider a murder charge for which appellant had been acquitted, in imposing sentence?

For the reasons that follow, we answer these questions in the negative and affirm.

## BACKGROUND

On September 1, 2014, Tiffani Wilson hosted a birthday party for her husband, Javon Evans, at their home at 1816 McCulloh Street in Baltimore, Maryland. Several family members were in attendance, including Tiffani's daughter and Evans's stepdaughter, Shakeara Wilson. Shakeara lived in the basement of the home with her boyfriend, appellant. At this time, Shakeara was five or six months pregnant with a child conceived with appellant. When the festivities concluded around 11:00 p.m. or midnight and party-goers had gone home, Tiffani was cleaning up on the main floor. Evans had gone upstairs to the bedroom, and Shakeara was in the basement with appellant.

---

[1]Appellant was charged with three counts of first-degree assault, three counts of second-degree assault, use of a handgun in a crime of violence, and possession of handgun by a prohibited person. The jury acquitted appellant of all charges, except for one count of second-degree assault.

Shakeara testified that she and appellant began to argue, which led to a fight, which Shakeara described as "words and pushing." After some mutual pushing, appellant "restrained" Shakeara by grabbing her around the throat, but "didn't squeeze." When appellant released Shakeara, she ran upstairs to get Evans.

Tiffani observed that Shakeara was upset when she came upstairs; she was "hollering and screaming," crying, and saying "Larry" repeatedly. According to Tiffani, Shakeara, Evans, and Tiffani went down to the basement to confront appellant.

Evans approached appellant and said, "Didn't I tell you about putting your hands on my daughter" before punching appellant. In response, appellant pulled out a gun and fired it into the ceiling.[2]

Tiffani testified that after this incident, she went upstairs to keep others from coming down to the basement. Later, she observed that Shakeara had a "swollen and red" eye, like she "had a blood clot." When Tiffani asked Shakeara about her injuries, Shakeara stated that appellant punched her in the face and stomach before leaving the house.

By contrast, Shakeara testified that, when Evans and Tiffani went downstairs to confront appellant, she remained upstairs and could hear arguing. Shakeara stated that she never saw anyone with a gun, nor did she hear a gunshot. Shakeara's taped statement to police was played for the jury. In that taped statement, Shakeara stated that she heard her mother say, "oh you got a gun" meaning appellant, and Shakeara heard a shot go off.

---

[2] The prosecutor called Evans to the stand, but he refused to testify, invoking his Fifth Amendment privilege against self-incrimination.

2

During the interview, a detective asked Shakeara, "did you pass out when you were choked?" Shakeara responded "borderline." Shakeara stated that, as she was breaking free from appellant, she "felt herself going out a little bit," but she was able to run upstairs and tell Evans. Shakeara further stated that appellant punched her in the face at some point before leaving the house.

The record is unclear as to how the police were summoned to the Evans/Wilson residence. Nevertheless, Officer Joseph Banks Jr., from the Baltimore City Police Department, responded to the residence and assisted in the investigation of the incident. Officer Banks interviewed Shakeara, who stated that appellant hit her.

Detective Valencia Vaughn from the Baltimore City Police Department later executed a search warrant at the residence, and a gun, shell casing, cell phone, and wallet were recovered. Tassew Mekuria, a technician with the Baltimore Crime Laboratory, recovered the gun from the third floor bedroom. Tiffani testified that she found that gun by the back door and asked Evans to take it upstairs. She stated that the recovered gun was not the one appellant had used in the September 1st incident. Tiffani had intended to turn it over to the police, but the police searched the house before she had the opportunity to do so. The gun had Evans's DNA on it, but not appellant's.

Mekuria also noted that the ceiling in the basement had a bullet hole in it, but he was unable to recover the bullet. He did, however, recover a shell casing from the basement floor. Christopher Faber, a firearms examiner with the Baltimore City Police Crime Lab Mobile Unit, was accepted as an expert in firearms and tool mark identification. Faber examined the recovered gun and shell casing. He testified that the recovered gun

3

was a Taurus PT908 9mm handgun, and the recovered shell casing had been fired from a 9mm handgun. Faber opined, however, that the shell casing did not come from the recovered gun. He testified that another 9mm semi-automatic handgun was used to fire it.

In continuing the investigation, the police were unable to find another handgun. Detective Vaughn interviewed appellant, and he admitted assaulting Shakeara. The prosecutor played portions of this interview for the jury. Appellant denied any knowledge of a handgun, however.

Additional facts will be included as needed in the discussion below.

## DISCUSSION

### I. Evidentiary Issues

### A.

Appellant contends that the court committed several evidentiary errors in the course of the trial. First, appellant contends that the court erred in admitting three pieces of evidence in violation of Maryland Rule 5-404(b). These three pieces of evidence were testimony: (1) from Tiffani that appellant and Shakeara had a "violent" relationship; (2) from Tiffani as to an incident wherein appellant "knocked [Shakeara's] bottom tooth out" with a phone; and (3) from Shakeara, during her redirect examination, that appellant had assaulted her before. Appellant contends that the above testimony did not fall into any exception of Rule 5-404(b) and also had no probative value.

The State argues that evidence of appellant's prior conduct with his girlfriend - domestic abuse - is probative of his motive, which is a recognized exception of Rule 5-

4

404(b).  If the court erred in admitting this testimony, however, the State argues any error was harmless, because appellant admitted to striking Shakeara, the photographs depicting Shakeara's injuries were admitted into evidence, and the jury convicted appellant of second-degree assault instead of first-degree assault.

Rule 5-404(b) provides: "Evidence of other crimes, wrongs, or acts . . . is not admissible to prove the character of a person in order to show action in conformity therewith.  Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."  Md. Rule 5-404(b).  Ordinarily, we review the trial court's evidentiary rulings for an abuse of discretion.  *See Wilder v. State*, 191 Md. App. 319, 335, *cert. denied*, 415 Md. 43 (2010).

As to other crimes evidence, however, the Court of Appeals has established a three-part test for its admission:

> When a trial court is faced with the need to decide whether to admit evidence of another crime - that is, evidence that relates to an offense separate from that for which the defendant is presently on trial - it first determines whether the evidence fits within one or more of the *Ross* [*v. State*, 276 Md. 664 [ ] (1976)] exceptions.  That is a legal determination and does not involve any exercise of discretion.
>
> If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence.  We will review this decision to determine whether the evidence was sufficient to support the trial judge's finding.
>
> If this requirement is met, the trial court proceeds to the final step.  The necessity for and probative value of the other crimes evidence is to be carefully weighed against any undue prejudice

likely to result from its admission. This segment of the analysis implicates the exercise of the trial court's discretion.

*Snyder v. State*, 361 Md. 580, 603-04 (2000) (citations and internal quotation marks omitted) (quoting *State v. Faulkner*, 314 Md. 630, 634-35 (1989)). In the instant case, appellant finds fault with the trial court's determinations as to the first and third elements of the three-part test.

Motive is a recognized exception to the general rule against admission of other crimes evidence. *See* Md. Rule 5-404(b). The Court of Appeals has defined motive as "'the catalyst that provides the reason for a person to engage in criminal activity.'" *Ayala v. State*, 174 Md. App. 647, 658 (2007) (quoting *Snyder*, 361 Md. at 604), *cert. denied*, 401 Md. 173 (2007). "To be admissible as evidence of motive, however, the prior conduct must be committed within such time, or show such relationship to the main charge, as to make connection obvious, . . . that is to say they are so linked in point of time or circumstances as to show intent or motive." *Snyder*, 361 Md. at 605 (ellipses in original) (internal quotations marks omitted).

The Court of Appeals has held that "[e]vidence of previous quarrels and difficulties between a victim and a defendant is generally admissible to show motive." *Snyder*, 361 Md. at 605. For example, in *Jones v. State*, the State sought to admit evidence that Jones had committed violent acts against his wife during the course of the marriage in his trial for her murder. 182 Md. 653, 657 (1944). The Court noted: "[T]here was almost a continuous state of hostility between them. These other crimes of the accused, having been committed on the same person, are so closely connected to the offense charged as to

6

be evidence as to the intent and motive of the accused in this case." *Id.*

In *Snyder*, where Snyder was on trial for the murder of his wife, the Court held that the trial court had properly admitted testimony of a physical dispute between Snyder and his wife that occurred nearly a year before her murder, that the couple had a "stormy" relationship, and a fight the night before the murder during which Snyder said that his wife was "a dead woman." *Snyder*, 361 Md. at 608. The Court stated: "That evidence was probative of a continuing hostility and animosity, on the part of [Snyder], toward the victim and, therefore, of a motive to murder, not simply the propensity to commit murder." *Id.* at 608-09. Similarly, the Court held that the trial court had properly admitted testimony from the couple's daughter of prior instances of Snyder hitting his wife. *Id.* at 609. Snyder argued that these past episodes were too remote in time to the murder to be relevant, but the Court held that "the incidents [which occurred over a period of at least the previous thirteen years] are logically related to motive 'to show that the accused made declarations reflecting on his wife, the deceased, to show a long course of ill treatment; to show that they quarreled, [and] that he [ ] maltreated her.'" *Id*. at 611 (quoting *Jones*, 182 Md. at 656-57); *see also Stevenson v. State*, 222 Md. App. 118, 148-50 (finding evidence that a witness observed Stevenson argue with his wife a week before her death, that the wife told the witness that Stevenson tried to force her to have sex, and that the wife had a slap mark and other bruises on her face two weeks before her death was admissible to show motive), *cert. denied*, 443 Md. 737 (2015).

In this case, the challenged evidence is probative of appellant's motive in that it shows a history of abuse by appellant of Shakeara, similar to the properly admitted

7

evidence in *Jones*, *Snyder*, and *Stevenson*. It is of no moment that those cases were for murder, and the case at bar is for assault. The motive is the same: the exertion of control over the victim through the perpetration of a cycle of violence. Accordingly, the evidence of appellant's previous history of abuse of Shakeara was properly admitted as evidence of motive pursuant to Rule 5-404(b).

As to the third element of the three-part test, we are not persuaded that the court abused its discretion in admitting the subject evidence. A court abuses its discretion where the ruling "is 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'" *Hebron Vol. Fire Dep't, Inc. v. Whitelock*, 166 Md. App. 619, 644 (2006) (quoting *Rolley v. Sanford*, 126 Md. App. 124, 131 (1999)). Stated another way, a court abuses its discretion "'where no reasonable person would take the view adopted by the [trial] court [ ] or when the court acts without reference to any guiding rules or principles.'" *Nash v. State*, 439 Md. 53, 67 (quoting *North v. North*, 102 Md. App. 1, 13 (1994)) (internal quotation marks omitted), *cert. denied*, 135 S.Ct. 284 (2014).

The challenged evidence was clearly probative of appellant's motive. We, therefore, disagree with appellant's contention that this evidence had no probative value whatsoever. Consequently, appellant has failed to convince us that the trial court abused its discretion in determining that the subject evidence's probative value was not outweighed by the danger of undue prejudice.

Even if the trial court admitted the subject evidence in error, any such error is harmless beyond a reasonable doubt. In a recording played to the jury, appellant admitted

8

that he struck Shakeara. The photographs of Shakeara's battered face also were in evidence for the jury to review. Finally, and most importantly, defense counsel repeatedly stated in closing argument that "this is a second[-]degree assault," and told the jury "that conviction, if you find one, should only involve second[-]degree assault, because that's all that this is." The jury apparently agreed with defense counsel's argument, convicting appellant of one count of second[-]degree assault and acquitting him of all other more serious charges. Therefore, any testimony relating to appellant's prior assaults on Shakeara could not have had any effect on the verdict.

**B.**

As part of his case, appellant recalled Detective Vaughn to the stand, and the following occurred:

| [DEFENSE COUNSEL]: | Detective Vaughn, if you could refer to your progress reports, again, please? |
|---|---|
| [DETECTIVE VAUGHN]: | Yes, sir. |
| [DEFENSE COUNSEL]: | Do you have them in front of you? |
| [DETECTIVE VAUGHN]: | Yes. |
| [DEFENSE COUNSEL]: | Um, what is the line that you use at the end of ever [sic] progress report? |
| [DETECTIVE VAUGHN]: | Investigation to continue. |

\* \* \*

| [DEFENSE COUNSEL]: | Do you have a progress report that shows that the DNA analysis |

9

|                      |                                                                          |
|----------------------|--------------------------------------------------------------------------|
|                      | report came back negative to [appellant]?                                |
| [PROSECUTOR]:        | Objection.                                                               |
| THE COURT:           | I will allow it in that form.                                            |
| [DETECTIVE VAUGHN]:  | No, I do not.                                                            |
| [DEFENSE COUNSEL]:   | Okay.  Thank you for allowing you to ask me these two questions [sic].   |

* * *

|                      |                                                                          |
|----------------------|--------------------------------------------------------------------------|
| THE COURT:           | [Prosecutor], any cross-examination?                                     |
| [PROSECUTOR]:        | Briefly, your Honor.                                                     |
|                      | Detective Vaughn, you have a whole series of progress notes, don't you?  |
| [DETECTIVE VAUGHN]:  | Yes, sir.                                                                |
| [PROSECUTOR]:        | This wasn't the only incident you were investigating as it relates to this case? |
| [DEFENSE COUNSEL]:   | Objection.   Beyond the scope.                                          |
| THE COURT:           | Overruled.                                                               |
| [DETECTIVE VAUGHN]:  | Yes, sir, it was not.                                                    |
| THE COURT:           | You asked about.                                                         |
| [PROSECUTOR]:        | In fact, what unit are you with, Detective Vaughn?                       |
| [DETECTIVE VAUGHN]:  | The Homicide Unit.                                                       |

10

| | |
|---|---|
| [DEFENSE COUNSEL]: | Objection, your Honor. May we approach? |
| THE COURT: | No. And you may sit down. Overruled. |

* * *

| | |
|---|---|
| [PROSECUTOR]: | Those progress reports indicate an investigation you were handling that related to the events at the 6 - 1816 McCulloh Street? |
| [DETECTIVE VAUGHN]: | Yes, sir. |

Appellant contends that the court erred in permitting the State to elicit testimony as to the additional investigation conducted by Detective Vaughn and her position in the Homicide Unit. Appellant argues that the "clear implication" of this testimony is that appellant was under investigation for homicide. Appellant contends that Detective Vaughn's testimony is inadmissible "other crimes" evidence pursuant to Rule 5-404(b), and even if it wasn't, such testimony is irrelevant and outside the scope of appellant's direct examination.

As to evidence of Detective Vaughn's assignment to the Homicide Unit, "[i]t is a long-standing rule in Maryland that any objection to the admission of evidence is waived by the subsequent admission, without objection, of the same evidence at a later point in the proceedings." *Standifur v. State*, 64 Md. App. 570, 579 (1985), *aff'd*, 301 Md. 3 (1987); *see also Clark v. State*, 97 Md. App. 381, 394-95 (1993) (noting that objection to evidence will be waived if it is admitted elsewhere without objection). The jury was well aware that Detective Vaughn worked in the Homicide Unit, as she so stated at least twice prior to

11

appellant's objection: the first on direct examination in the State's case-in-chief; and the second on direct examination in the appellant's case.[5]   Appellant failed to object previously when Detective Vaughn stated that she worked in the Homicide Unit. Accordingly, appellant has waived this issue.

As to evidence of Detective Vaughn's other investigation, the State points out that appellant questioned her about her other duties.   For example, during cross-examination of Detective Vaughn in the State's case, the following occurred:

> [DEFENSE COUNSEL]:     Um, now you - you were the investigating officer on - on - on the investigating detective on this case?
>
> [DETECTIVE VAUGHN]:     I was investigating another matter.

Appellant did not object to this testimony.   Accordingly, evidence that Detective Vaughn was investigating another matter had been admitted without objection.   Appellant's subsequent objection is, therefore, waived.

## II. Motion for Mistrial

At the conclusion of the prosecutor's cross-examination of Detective Vaughn, the following occurred:

> [PROSECUTOR]:     And, in fact, um, those progress reports are related to a homicide, am I correct?

---

[5] We also note that, when asked by defense counsel who requested the firearms analysis of the recovered gun and shell casing, firearms examiner Faber stated: "Detective Vaughn from – from the Homicide Unit."   Appellant failed to object to this testimony.

| | |
|---|---|
| [DEFENSE COUNSEL]: | Objection, your Honor. |
| THE COURT: | Sustained. |
| [DEFENSE COUNSEL]: | Move to strike. |
| THE COURT: | It will be stricken. The question and the answer - |
| [DEFENSE COUNSEL]: | May we approach? |
| THE COURT: | -- the question - there's no need to approach. I sustained the objection. I did everything you asked. |

* * *

| | |
|---|---|
| [DEFENSE COUNSEL]: | Your Honor, I'm going to move for a mistrial. |
| THE COURT: | And the basis? |
| [DEFENSE COUNSEL]: | May I be heard? The basis is that the [prosecutor] intentionally tried to introduce evidence of the homicide without any (inaudible) basis, trying to prejudice my client in this case by making the jury think that the investigation found something more serious than the domestic incident, after we specifically talked about that. It had nothing to do with my questioning. |
| THE COURT: | Okay. |
| [DEFENSE COUNSEL]: | And I think it was really obvious. |
| THE COURT: | [Prosecutor]? |

13

| | |
|---|---|
| [PROSECUTOR]: | Your Honor, the - the reason that Detective Vaughn was brought up was to highlight her lack of documentation in her progress notes. The notes that she had in those progress notes contained more than just this investigation. It was on cross-examination. The defense was well aware that that was a possibility, and despite that, he called her as a witness. |
| THE COURT: | Okay. |
| [DEFENSE COUNSEL]: | Cross-examination on the issues at hand. I asked her about the DNA analysis and about notes at the bottom of the - of the incident. |
| THE COURT: | They were all her progress reports she referred - you referred to all of her progress reports. It's at the bottom of all of the progress reports. |
| [DEFENSE COUNSEL]: | That doesn't make irrelevant material relevant. |
| THE COURT: | I'm not - |
| [DEFENSE COUNSEL]: | What does that have to do with - |
| THE COURT: | I'm [sic] sustained the objection. I struck the response. I don't think it rises to the level of requiring a mistrial. There was no addition of other attempt at that, so I am not granting a mistrial. |

On appeal, appellant contends that the trial court should have granted the motion for mistrial because Detective Vaughn's statement that she was investigating a homicide

14

deprived him of a fair trial. Appellant notes that the court had admonished the prosecutor prior to trial from eliciting any testimony as to the homicide investigation. Although he concedes that the trial court sustained his objection and struck "the question and the answer,"[6] appellant argues that there is a point at which the jury cannot be expected to ignore a prejudicial remark. Appellant contends that the prosecutor's cross-examination of Detective Vaughn is just such an instance.

The State responds that there was no clear prejudice stemming from Detective Vaughn's testimony. The State contends, moreover, that appellant "repeatedly worked at the edges" of Detective Vaughn's other investigation, and the jury was aware that Detective Vaughn worked in the Homicide Unit. The State argues, therefore, that the jury could have inferred that Detective Vaughn was investigating a homicide at the Evans/Wilson residence, and her explicit testimony of this fact was not a surprise. Indeed, the State contends that the only person that was clearly prejudiced by Detective Vaughn's testimony was Evans because the jury heard evidence that Evans's DNA was found on the recovered gun, and he refused to testify by invoking his Fifth Amendment privilege against self-incrimination in front of the jury.

The Court of Appeals has recognized that "'a decision to grant a mistrial lies within the sound discretion of the trial judge and that the trial judge's determination will not be disturbed on appeal unless there is abuse of discretion.'" *Simmons v. State*, 436 Md. 202, 212 (2013) (quoting *Carter v. State*, 366 Md. 574, 589 (2001)); *see also Powell v. State*,

---

[6] Detective Vaughn gave no answer to the question that was stricken.

15

406 Md. 679, 694 (2008) (stating "that a mistrial is generally an extraordinary remedy"). The abuse of discretion standard is appropriate, because "'[t]he judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able . . . to note the reaction of the jurors and counsel to inadmissible matters. That is to say, the judge has his finger on the pulse of the trial.'" *Simmon*s, 436 Md. at 212 (quoting *State v. Hawkins*, 326 Md. 270, 278 (1992)). In some instances, however, a court must declare a mistrial to preserve an accused's right to a fair trial. *See Johnson v. State*, 423 Md. 137, 149 (2011); *Powell*, 406 Md. at 694 (noting necessity of mistrial where "it is the remedy 'necessary to serve the ends of justice.'") (quoting *Cooley v. State*, 385 Md. 165, 173 (2005)). "We will not reverse a trial court's denial of a motion for mistrial unless the defendant was so clearly prejudiced that he or she was denied a fair trial." *Wright v. State*, 131 Md. App. 243, 253, *cert. denied*, 359 Md. 335 (2000).

Although it is true that prior to trial, the trial court warned the prosecutor not to elicit any testimony as to the homicide investigation, the question to Detective Vaughn was the single reference to the other investigation being a homicide. In determining whether to grant a mistrial, courts should consider

> whether the reference . . . was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; whether the witness making the reference is the principal witness upon whom the entire prosecution depends; whether credibility is a crucial issue; [and] whether a great deal of other evidence exists[.]

*Carter*, 366 Md. at 590 (internal quotation marks omitted) (quoting *Rainville v. State*, 328 Md. 398, 408 (1992)). As noted, the prosecutor's question was the single reference to the

16

other investigation being for a homicide. Detective Vaughn never answered the subject question, nor did she ever state or imply that appellant was the subject of a homicide investigation.

Also, the trial court immediately sustained appellant's objection to the question and struck it. Appellant did not request a curative instruction. In instructing the jury after the presentation of evidence, the court stated: "The following things are not evidence and you should not give them any weight or consideration. Any testimony that I struck or told you to disregard . . . ."

We are, therefore, not persuaded that appellant was so clearly prejudiced that he was denied a fair trial. *See Carter*, 366 Md. at 592 (noting that jurors are presumed to follow the court's instructions); *see also Bryant v. State*, 129 Md. App. 150, 161 (1999) ("An accused 'has a constitutional right to a fair trial but not necessarily to that seldom experienced rarity, a perfect trial.'" (quoting *State v. Babb*, 258 Md. 547, 552 (1970))), *cert. denied*, 358 Md. 164 (2000).

### III. Sentencing Considerations

At the sentencing hearing, the following occurred:

| | |
|---|---|
| [PROSECUTOR]: | Your Honor, ultimately, the [State] strongly believes that [appellant] is responsible for the death of Richard Mira. Did assault - |
| [DEFENSE COUNSEL]: | Objection. What - what does that have to do with this hearing? |
| [PROSECUTOR]: | A lot. |

17

| | |
|---|---|
| THE COURT: | It's a disposition. |
| [DEFENSE COUNSEL]: | He was found not guilty of that. |
| THE COURT: | It's a disposition. |
| [DEFENSE COUNSEL]: | For an assault, okay. |
| THE COURT: | I'll hear it. |
| [PROSECUTOR]: | Your Honor, I think this court, and I think, you know, [defense counsel] brings up a good point. But I think this court can consider those under *Henry v.* [*S*]*tate*[, 273 Md. 131 (1974)], "The trial judge is not required to remain oblivious to the evidence of the defendant's involvement in crimes for which he was acquitted." [sic]<br><br>And I'm asking the Court to take those- those larger circumstances into consideration when it is looking at an appropriate sentence for [appellant]. |

Appellant contends that the trial court impermissibly considered his acquittal for murder in sentencing him in this case. Accordingly, to appellant, the State failed to provide any reliable evidence of his involvement in the murder for which he was acquitted. Appellant concedes that the court did not mention the acquittal in sentencing him, but he contends that the court clearly considered it because it said, "I'll hear it."

The State counters that, although it has the discretion to offer evidence of appellant's participation in a crime for which he was acquitted pursuant to *Henry*, it chose not to do so

18

in this case. Moreover, the State contends, the court did not mention the acquittal in announcing the sentence; instead, the court focused on appellant's three convictions.

The Court of Appeals has held that an appellate court will review a sentence on three grounds: "'(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) whether the [trial court] was motivated by ill-will, prejudice[,] or other impermissible considerations; and (3) whether the sentence is within statutory limits.'" *Sharp v. State*, 446 Md. 669, 685-86 (2016) (quoting *Jones v. State*, 414 Md. 686, 693 (2010)). Here, appellant contends that in sentencing him, the court impermissibly considered his acquittal for murder.

In reviewing a challenge to a sentence, we "must read the trial court's statements 'in the context of the entire sentencing proceeding' to determine whether the trial court's statements 'could lead a reasonable person to infer that the [trial] court might have been motivated by an impermissible consideration.'" *Sharp*, 446 Md. at 689 (quoting *Abdul-Maleek v. State*, 426 Md. 59, 73-74 (2012)). A trial court, however, "'is vested with very broad discretion in sentencing criminal defendants[,]'" and "'[a] judge should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background.'" *Jackson v. State*, 364 Md. 192, 199 (2001) (quoting *Poe v. State*, 341 Md. 523, 531-32 (1996)).

The Court of Appeals has held that "a sentencing judge may properly consider uncharged or untried offenses." *Smith v. State*, 308 Md. 162, 172 (1986) (citations omitted). This includes consideration of circumstances surrounding an acquittal. *See*

19

*Henry*, 273 Md. at 147-48. "Indeed, since an acquittal does not necessarily establish the untruth of all evidence introduced at the trial of the defendant, the 'sentencing judge also may properly consider reliable evidence concerning the details and circumstances surrounding a criminal charge of which a person has been acquitted.'" *Logan v. State*, 289 Md. 460, 481 (1981) (quoting *Henry*, 273 Md. at 148); *see also Hamwright v. State*, 142 Md. App. 17, 42-43 (2001).

Appellant acknowledges *Henry* and its progeny. Appellant contends, nevertheless, that the State failed to produce any reliable evidence of the circumstances surrounding the murder charge for which appellant was acquitted.

In sentencing appellant, the court remarked:

> **So, there - there is a history of violent behavior involving convictions**. Stand up, sir. And I'm sure the social worker would agree that history is a precursor of the future.
>
> The report that was provided discusses a lot of things which if they had happened at various times in [appellant's] life things may have been different. Unfortunately, we have to deal with the [appellant] who is here, not the [appellant] that it would be nice to have had society and his family create.
>
> The report makes all kinds of recommendations and things with [appellant], but it sort of overlooks one of the significant things, which this court has to address, and that is the potential for future criminality.
>
> **He has been convicted three times of behavior which would normally be classified as violent. In 2008, assault and robbery or assault and theft. The case before Judge Jackson** [which was not the murder case], **and the case that was just tried in front of me.**
>
> In spite of all the things in which the social worker believes would be of benefit to [appellant], the greatest concern I have is his threat

to society, and the fact that this is essentially a domestic related case because the person assaulted was a woman who was pregnant with his child, makes it even more troubling.

Because as we seem to see on a regular basis, persons who engage in such activity involving intimate acquaintances, continue, and it's not unusual for the intimate acquaintance, especially one who bears a child, oh, well, no, I didn't really want - I don't want him to go to jail. I don't want anything bad to happen to him. I want him to come home.

It's going to be awhile [sic] before [appellant] gets home.

The sentence of the court is ten years. You may advice [sic] him of his post-trial rights.

(Emphasis added).

Although it would have been acceptable for the trial court to have considered reliable evidence of the circumstances surrounding appellant's acquittal, here, after examining the totality of the sentencing proceeding, we are not persuaded that the trial court considered appellant's acquittal for murder at all. The court never mentioned the acquittal in its remarks, but it did explicitly refer to appellant's three convictions as reasons supporting the sentence. We simply cannot find error based on the court's remark of "I'll hear it," which permitted the prosecutor to proffer evidence of appellant's acquittal for murder, which the prosecutor subsequently did not do. Accordingly, we are not convinced that a reasonable person would infer that the sentencing court was motivated by an impermissible consideration.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

21