*Timothy Aaron Covington v. State of Maryland*, No. 939, September Term 2024. Opinion by Ripken, J.

**SUBJECT MATTER JURISDICTION – CRIMINAL PROCEDURE – CONCURRENT JURISDICTION OF CIRCUIT COURT AND DISTRICT COURT – EFFECT OF JURY DEMAND**

Under section 4-301 and 4-302 of the Courts and Judicial Proceedings Article of the Maryland Code, the District Court and circuit courts share concurrent subject matter jurisdiction over certain criminal actions, including statutory misdemeanors in which the penalty is confinement for three years or more. For cases commencing in the District Court in which concurrent jurisdiction exists, once a timely jury demand has been made, the District Court is deprived of jurisdiction, and jurisdiction cannot thereafter be divested from the circuit court. The District Court cannot regain jurisdiction if a defendant, after demanding a jury trial and acquiring jurisdiction in the circuit court, later seeks to retract that demand.

Circuit Court for Caroline County
Case No. C-05-CR-23-000259

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0939

September Term, 2024

_____

TIMOTHY AARON COVINGTON

v.

STATE OF MARYLAND

_____

Ripken,
Tang,
Zarnoch, Robert A.,
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Ripken, J.

_____

Filed: May 1, 2026

*Kehoe, Stephen J. did not participate in the
Court's decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

In August of 2023, Timothy Aaron Covington ("Appellant") was charged with two counts of second-degree assault stemming from an altercation that took place at a Royal Farms gas station.[1] Following a demand for jury trial made by Appellant, the case was transferred from the District Court of Maryland for Caroline County to the Circuit Court for Caroline County. At the conclusion of the jury trial, Appellant was convicted of two counts of second-degree assault.[2] He was sentenced to a term of ten years' incarceration for each conviction, which the court ordered be served consecutively, for a total of twenty years' incarceration. This timely appeal followed. Appellant has presented the following issues for our review:[3]

---

[1] Royal Farms is a mid-Atlantic gas station and convenience store chain with nearly three hundred locations across seven states. *See About*, Royal Farms, https://perma.cc/Q62B-JWBP; *Find a Store Near You!*, Royal Farms, https://perma.cc/J7GY-P7TJ.

[2] Appellant was found not guilty of malicious destruction of property; the trial court also granted a motion for judgment of acquittal as to one count of disorderly conduct.

[3] Rephrased and consolidated from:

I. Whether the Circuit Court Lacked Jurisdiction Rendering The Conviction A Nullity Because the District Court Erred In Granting The Jury Demand And The Circuit Court Erred In Failing To Dismiss The Demand And Remand It To The District Court[.]

II. Whether The Evidence Was Insufficient To Support Second Degree Assault[.]

III. Whether The Trial Court Erred In Permitting The State's Witness To Tell The Jury The Appellant Was The "Problem Of Denton[.]"

IV. Whether The Trial Court Erred In Considering Improper Items At Sentencing[.]

V. Whether The Sentences Should Merge Under Principles Of Fundamental Fairness And Whether They Violated Federal And State Prohibitions Against Cruel And Unusual Punishment[.]

(Small capitals omitted).

I. Whether the circuit court had subject matter jurisdiction over the case following the submission of the jury trial prayer.

II. Whether the evidence is sufficient to sustain Appellant's convictions for second-degree assault.

III. Whether the circuit court erred in overruling Appellant's objection to testimony he elicited.

IV. Whether the circuit court erred in sentencing Appellant.

For the reasons to follow, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The following was elicited at trial.

Brian Snyder was working at a Royal Farms gas station in Caroline County in August of 2023. On that day, Appellant arrived at the store to purchase gas; however, although Appellant asked for $50.00 to be placed on a certain pump, Appellant's vehicle was located at a different pump.[4] By the time the Royal Farms employees were alerted that the funds were placed on a pump that was not the one where the vehicle was located, another customer had started pumping gas from the pump where the funds had been allocated. According to the Royal Farms policy, the full amount could not be refunded by the employees because another customer had already pumped some of the gas. However, Snyder provided a refund of $44.00 and advised Appellant that Appellant could contact corporate to obtain the remaining refund of $6.00. When Appellant learned that the full

---

[4] Snyder's testimony was that Appellant had asked for the funds to be placed on the wrong pump.

2

$50.00 could not be refunded by the employees, the incident escalated. After being told the same information by Snyder's manager, Appellant ripped the register off the counter, walked around the counter into the employee-only zone, and began "throwing punches." Snyder identified Appellant in court and testified that Appellant had punched him "right behind the left side of [his] jaw." Snyder testified that he, his manager, and another individual had to push Appellant out of the store. After the police arrived, officers remained outside with Appellant for "nearly an hour" in an attempt to talk and de-escalate the situation. Appellant left the premises but later returned and attempted to speak with Snyder, who went inside, locked the door, and called the police again. Snyder applied an ice pack to his face, and after leaving work that day, he sought medical attention for the injury to his jaw.

Zachary Geibel testified that in August of 2023, he was the store leader at the Royal Farms in Denton. That day, Geibel had left the store to run an errand; however, he returned after receiving a phone call from Snyder regarding Appellant and the ongoing situation. Geibel explained to Appellant that because someone else had pumped $6.00 of his gas, the store employees could not refund the gas that was already pumped; however, they would refund the portion of funds that were available, in the amount of $44.00. Geibel attempted to give Appellant $44.00; however, Appellant pushed the money back. Geibel recalled Appellant getting angry, loud, appearing not to comprehend, and then knocking over the register, moving behind the counter, and assaulting him and Snyder. Geibel explained that Appellant hit him, causing his glasses to fly off. Per Geibel, he, Snyder, and another customer then pushed Appellant out of the store.

3

Officer Ciaran Mayo ("Ofc. Mayo") testified that on August 12, 2023, he was on duty for the Denton Police Department when he received a call to respond to the Royal Farms in Denton. He spoke to Geibel, Snyder, and Appellant in the process of conducting an investigation. Ofc. Mayo observed that Snyder seemed "upset" and "annoyed at what had happened[,]" and that he was holding ice to his face. Ofc. Mayo testified that he spoke with Appellant, who stated that the dispute concerned the $6.00 in gas that was pumped but not refunded by the cashier.

Royal Farms surveillance footage, which captured the events, was admitted into evidence and played for the jury. The footage depicted Appellant interacting with Snyder, who was behind the counter and the register, handling funds and speaking on the phone. The footage depicted Snyder attempting to assist a different customer with a purchase; however, Appellant snatched the currency out of the other customer's hands before returning it to the customer and physically moving between the customer and Snyder, preventing further interaction between the two. The footage then depicted Geibel entering the area behind the register. Thereafter, footage depicted the interaction between Geibel and Appellant wherein Geibel showed Appellant a receipt, waving it in Appellant's direction. During that interaction, Geibel's arm did not appear to extend beyond the checkout counter. Appellant is then seen leaning across the counter, snatching the receipt from Geibel's hand, and knocking over the screen for the register. Appellant then walked behind the register counter, where he proceeded to make a fist with his hand and strike both Snyder and Geibel. Another customer intervened and assisted Snyder and Geibel in removing Appellant from the area behind the register and moving him towards the store

4

exit. Snyder and Geibel then returned to the area behind the register, and Snyder is depicted holding the left side of his face and applying ice to that area.

Following submission of the State's case-in-chief, Appellant moved for a judgment of acquittal. As to the assaults, Appellant argued that in a light most favorable to the State, there was no evidence that Snyder and Geibel did not want to participate in the encounter. Appellant asserted that he did not believe the State had established a *prima facie* case of assault. The Court denied the motion.

Appellant presented one witness in defense. State Trooper Shane Hansely testified that on August 13, 2023, he responded to a call for a disturbance at the Royal Farms to assist the Denton Police Department. Trooper Hansely indicated that Appellant's demeanor was irate. Based on his conversation with Appellant, Trooper Hansely understood that Appellant had prepaid $50.00 at one of the gas pumps, and that the sum Appellant received back from Royal Farms was not the correct amount.

The defense rested, and Appellant submitted a renewed motion for judgment, which the court denied. The jury returned a verdict, finding Appellant guilty of two counts of assault. The court sentenced Appellant to a term of ten years' incarceration for each assault conviction, which the court ordered be served consecutively, for a total of twenty years' incarceration. This timely appeal followed.

**DISCUSSION**

I.  **THE CIRCUIT COURT FOR CAROLINE COUNTY HAD SUBJECT MATTER JURISDICTION FOLLOWING THE SUBMISSION OF THE JURY TRIAL REQUEST.**

**A. Additional Facts**

Appellant was initially charged in the District Court of Maryland for Caroline County by a statement of charges. The Office of the Public Defender entered an appearance, which was later struck at its request following the entry of a panel attorney on behalf of Appellant. Trial was set to commence in the District Court on December 13, 2023.

Less than a week before the trial was scheduled to commence, Appellant's counsel sought a postponement. The State initially acceded to the request; however, it subsequently withdrew consent and objected to the postponement, citing Appellant's attempts to harass "law enforcement personnel" and "members of the State's Attorney's Office[.]" The State specifically noted an incident where Appellant "had to be deflected from confronting the State's Attorney for Caroline County by a [c]ourthouse [d]eputy." The State also noted that the Appellant had previously obtained a postponement of the trial date. The District Court denied the postponement request.

A jury demand was then filed by counsel on behalf of Appellant, which noted that the State did not oppose the request. The District Court judge signed the jury prayer, noting that it was "granted." The case was promptly transmitted to the circuit court the same day.

Several days later, Appellant, who remained represented by counsel, filed a *pro se* motion in circuit court, announcing that his attorney had filed the jury demand without his knowledge or consent, and that he had not spoken to the attorney regarding the issue.

6

Appellant requested that the jury demand be rescinded. Appellant's attorney subsequently filed a motion to withdraw from representation of Appellant.

The circuit court conducted a hearing in January of 2024. Appellant moved for dismissal of the case based on lack of jurisdiction, premised on his view that the jury demand was not made on his behalf as he claimed he had not been consulted regarding the request. Appellant argued as a legal basis for his motion that the rules of professional conduct require lawyers to consult with a client "before making a decision with respect to how these court processes are to take place." He asserted that his attorney had "a legal obligation to be competent under the Maryland Rules of Lawyer's Professional Conduct," and that this obligation meant Appellant was owed "effective assistance of counsel." He continued, explaining his theory that his counsel's jury demand was a pretext to avoid a scheduling conflict, and that his lawyer did not fulfill his duties of diligence and competency. The circuit court observed that there was no mechanism to send a case back to the District Court in this situation, where a jury had been prayed and the case transferred. The court concluded that the circuit court had jurisdiction and denied Appellant's motion. The court also granted the motion to withdraw filed by Appellant's attorney.

New counsel for Appellant entered an appearance in the case on January 26, 2024. Three days later, the circuit court issued a notice setting a trial date of May 6, 2024. Three weeks before trial was set to commence, Appellant's trial counsel filed a consent motion to continue the trial. The request for a continuance was denied two days later. On April 19, 2024, Appellant moved through counsel to remand the case to the District Court. Appellant cited no legal authority to support this request, reiterating his position that his former

counsel had demanded a jury without his knowledge or consent, and that the jury demand was therefore "improper" because the right to a jury trial belongs to "the defendant, not the defendant's attorney." Appellant's motion did not raise the issue of jurisdiction. On the same date, Appellant also filed a motion seeking to transfer the case to a different county, asserting that he could not receive a fair trial in the Circuit Court for Caroline County because of bias he believed he would face from members of the State's Attorney's Office and courthouse security staff.[5] At Appellant's request, the court ordered that these motions be heard at the pretrial conference, which was in advance of trial.

At the pretrial conference, Appellant once again argued the motion to remand. Counsel expanded on the arguments raised in the written motion, asserting that Appellant's prior counsel filed the jury demand without Appellant's consent, which was akin to trial counsel deciding to proceed with a bench trial without Appellant's consent. Counsel argued that the primary issue was the absence of the opportunity for Appellant himself to decide whether to elect a jury trial or to proceed in the District Court. Counsel asserted that to remand the case to the District Court, the circuit court could use the mechanism that occurs

---

[5] To support his claim of bias, Appellant identified a statement from an opposition to a continuance filed by the Office of the State's Attorney for Caroline County when the matter was pending in District Court, in which the assigned State's Attorney indicated that Appellant had "attempted to harass both law enforcement personnel, members of the State's Attorney['s] Office, and had to be deflected from confronting the State's Attorney for Caroline County by a [c]ourthouse [d]eputy[,]" and that at the time, the county was "utilizing county resources to maintain the safety of its personnel as a result of [Appellant's] case." Appellant asserted that "[t]he fact that Caroline County itself is providing resources to protect Caroline County Courthouse personnel from [Appellant] is evidence alone to support transferring this case to a different county for trial."

when a District Court conviction is appealed, the defendant fails to appear and the court then remands the case from the circuit court to the District Court for imposition of sentence. The circuit court noted that there is a difference between a jury trial prayer and waiver of appeal by a failure to appear. After a disruption by Appellant and a re-summarization of the argument by counsel, the following ensued:

> [The Court]: Well, if you can cite me a rule or a case that shows that once the District Court loses jurisdiction on a jury trial prayer they can go back to District Court, I'll [b]e happy to consider it, but I know of none.
>
> [Appellant's Counsel]: So, the rule says that the jury trial [prayer] must be made by the defendant.
>
> [The Court]: Right.
>
> [Appellant's Counsel]: It wasn't done in this situation by the defendant.
>
> [The Court]: Right.
>
> [Appellant's Counsel]: It was made by . . .
>
> [The Court]: But the law also indicates that the attorney ah, who is represent in the defendant stands in . . . the shoes of the defendant and . . . that's something certainly that [Appellant] can take up with that particular attorney about that, but I think once the jurisdiction is divested in a different (unintelligible) I don't have a mechanism to send it back.

Counsel once again likened the possibility of dismissing the jury trial demand to remanding an appeal following a failure to appear. The court stated the following:

> But that's different . . . that is because when that happens, if they don't show up[,] you dismiss the appeal. It's an appeal, you're not dismissing the jury trial prayer. You're dismissing the appeal . . . . So then whatever happened . . . in District Court[,] that sentence is executed in District Court . . . . I don't think this is the same thing[.]

9

The court denied the motion to transfer the case to the District Court.[6]

### B. Party Contentions

Appellant asserts that the jury demand was improper and that the circuit court therefore never acquired subject matter jurisdiction. Appellant claims that his jury demand was improper because it was made by his counsel, and Appellant did not consent to the demand for a jury trial. Underlying Appellant's argument is his conclusion that the demand for a jury trial made on Appellant's behalf by his counsel cannot, or should not, be attributed to Appellant. Appellant asserts that because jurisdiction was improperly divested, it was possible to return jurisdiction to the District Court. As an alternative theory, Appellant asserts that even if this Court determines the circuit court had subject matter jurisdiction, the court improperly exercised its jurisdiction "when it knew that the jury trial request was done improperly and refused to remand the case to [D]istrict [C]ourt []"; therefore, Appellant asserts that double jeopardy principles prohibit retrial.[7]

---

[6] Appellant continued to object to the circuit court's jurisdiction. Prior to the commencement of trial, Appellant, after seeking to have his attorney represent him on only a hybrid basis and acting in a *pro se* capacity, requested that the court dismiss the case for lack of jurisdiction on the same bases previously identified. He added that the jury demand was not made in compliance with Maryland Rule 4-301(b)(1) because it was made less than fifteen days before the scheduled District Court trial date and because his lack of consent made agreement between the parties impossible. He also suggested that an evidentiary hearing was needed to resolve any factual disputes with respect to the motion. The court denied the motion, noting that the District Court had granted the request for jury trial, and the District Court was then divested of jurisdiction. After trial and prior to sentencing, Appellant moved to vacate the jury verdict on the same grounds. The motion was denied.

[7] Appellant further asserts that the circuit court's refusal to return the matter to the District Court was not harmless beyond a reasonable doubt. Because we find no error with respect

10

The State asserts that the jury demand was made in compliance with the governing rules and statutes, and therefore, the circuit court acquired jurisdiction, and the District Court was irrevocably deprived of jurisdiction. The State contends that Appellant's claim that the jury trial request was made without authorization is an issue that, at its core, is an allegation of deficient performance of his counsel—a claim that is properly raised in postconviction proceedings rather than on direct appeal in light of the lack of evidence in this record on what appears to be a contested factual dispute. The State further contends that Appellant's alternative argument—that if the circuit court had jurisdiction, it exercised it improperly—is contradictory; and because the circuit court had and properly exercised subject matter jurisdiction, double jeopardy principles are not implicated.

## C. Standard of Review

"A 'lack of subject matter jurisdiction may be raised at any time, including initially on appeal.'" *Bromberg v. State*, 265 Md. App. 528, 539 (2025) (quoting *Beckwitt v. State*, 477 Md. 398, 420 (2022) (further citations omitted)). The question of whether the circuit court correctly interpreted the jurisdictional statutes is reviewed without deference to the circuit court. *State v. Mailloux*, 261 Md. App. 205, 217, *cert. denied,* 487 Md. 278 (2024) (citing *Fielding v. State*, 238 Md. App. 262, 271 (2018)). This Court reviews the interpretation and application of statutory law without deference. *Bromberg*, 265 Md. App. at 539 (citing *State v. Krikstan*, 483 Md. 43, 64 (2023)).

---

to the circuit court's decision to deny the request to remand the case, we do not reach the question of harmless error.

### D. Analysis

*i.      The circuit court acquired jurisdiction via Appellant's jury demand.*

The District Court "is a court of limited jurisdiction and 'may exercise only those powers granted to it by statute.'" *Mailloux*, 261 Md. App. at 213 (quoting *Fielding*, 238 Md. App. at 279). Under section 4-301(b)(1) of the Maryland Code, (1974, 2020 Repl. Vol.), Courts and Judicial Proceedings Article ("CJP"), the District Court, with certain exceptions, "has exclusive original jurisdiction in a criminal case" over adult defendants charged with "[c]omission of a . . . statutory misdemeanor[.]" However, District Court jurisdiction remains subject to exceptions under CJP section 4-302. *See Mailloux*, 261 Md. App. at 213. Under CJP section 4-302(d)(1), the District Court does not have exclusive jurisdiction over criminal actions "[i]n which the penalty may be confinement for 3 years or more or a fine of $2,500 or more" because in those cases, the District Court shares concurrent jurisdiction with that of the circuit court.[8] CJP § 4-302(d)(1).

CJP section 4-302(e)(1) provides that "[t]he District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial *at any time prior to trial* in the District Court." (Emphasis added). A defendant is entitled to demand a jury trial "if the penalty for the offense with which he is charged permits imprisonment for a period in excess of [three] months." *Dill v. State*, 24 Md. App. 695, 706 (1975) (citation omitted).[9] "Once a defendant

---

[8] This exception is limited by a further carve-out that is not relevant in this case concerning certain drug and drug paraphernalia-related offenses. *See* CJP § 4-302(d)(2).

[9] Under CJP section 4-302(e)(2), a criminal defendant is not entitled to a jury trial if the penalty for the charged offense is less than ninety days of incarceration. In addition, even if the penalty for the charged offense is greater than ninety days of incarceration, a District

makes a timely demand for a jury trial of a charge pending against him in District Court, 'the District Court loses all jurisdiction over any other charges pending against the defendant which grew out of the same incident as the charge to be tried by a jury in the Circuit Court.'" *Mailloux*, 261 Md. App. at 215 (quoting *Powers v. State*, 70 Md. App. 44, 49 (1987) (further citations omitted)).

As relevant here, Appellant was charged with two counts of second-degree assault under section 3-203 of the Maryland Code (2002, 2021 Repl. Vol.), Criminal Law Article ("CL"), which is a statutory misdemeanor. *See* CL § 3-203(a)–(b). A conviction for a second-degree assault carries with it the potential for incarceration of up to ten years and a fine of up to $2,500.00. CL § 3-203(b). Therefore, while the District Court had subject matter jurisdiction over the charged offenses because the offense charged was a statutory misdemeanor, the circuit court shared concurrent jurisdiction because the penalty for second-degree assault exceeds the jurisdictional threshold identified in CJP section 4-302(d)(1)(i). *See Mailloux*, 261 Md. App. at 214 (citing CJP § 4-302(d)(1)(i)). Further, Appellant was entitled to demand a jury trial because the maximum penalty for the charged offenses exceeded three months, and neither the State nor the District Court recommended or agreed to limit Appellant's sentence to ninety days' incarceration. *See Dill*, 24 Md. App. at 706; CJP § 4-302(e); CL § 3-203(b). Finally, the only temporal restriction reflected in the statute limiting a defendant's ability to request a jury trial is that the demand be made

---

Court judge may deny a defendant a jury trial if the prosecutor recommends in open court that the judge not impose a penalty in excess of ninety days; the judge agrees not to impose such a sentence; and the judge agrees not to increase the defendant's bond if an appeal is noted. CJP § 4-302(e)(2).

13

"*at any time prior to trial* in the District Court." CJP § 4-302(e) (emphasis added). Because Appellant, through his attorney, was entitled to demand a jury trial and did so before trial commenced in the District Court, the jury demand immediately deprived the District Court of jurisdiction over Appellant's charges. *See Mailloux*, 261 Md. App. at 215.

>    ii.    *Subject matter jurisdiction could not be divested from the circuit court once acquired.*

Appellant asserts that mechanisms exist to return a case from circuit court to District Court in appropriate circumstances, and that the circuit court should have done so here. We disagree. While in limited circumstances a case may be remanded to the District Court following a jury demand if it is determined that the defendant was not entitled to a jury trial in the first place,[10] in the majority of circumstances, a District Court cannot reacquire jurisdiction once jurisdiction has been divested via a jury demand. *See* CJP § 4-302(e)(1); *State v. Huebner*, 305 Md. 601, 610 (1986).

CJP section 4-302(e)(1) states that if a timely jury demand is made by a defendant who is entitled to a jury trial, the District Court is deprived of jurisdiction. The jurisdictional statutes do not state or suggest that the District Court can subsequently reacquire jurisdiction; further, as the District Court "is a court of limited jurisdiction and may exercise only those powers granted to it by statute[,]" we decline Appellant's invitation to read into the statutes jurisdictional authority that does not exist. *See Mailloux*, 261 Md. App. at 213 (internal citation and quotation marks omitted).

---

[10] *See Bromberg*, 265 Md. App. at 545.

14

Our conclusion that the District Court cannot reacquire jurisdiction once jurisdiction has been divested via a jury demand is supported by the Supreme Court of Maryland's holding in *State v. Huebner*. 305 Md. 601. In *Huebner*, the State brought charges against two defendants for a variety of offenses, including resisting arrest, tampering with a vehicle, assault and battery on a police officer, hindering a police officer, and disorderly conduct. *Id.* at 603. The charges were initially brought in the District Court of Maryland for Prince George's County. *Id.* The defendants were entitled to and prayed a jury trial; however, the State, seeking to avoid a jury trial and have the District Court retain jurisdiction, subsequently entered a *nolle prosequi* to each of the charges that might have entitled the defendants to a jury trial, leaving only charges for disorderly conduct and disturbing the peace.[11] *Id.* at 603, 606. The Supreme Court of Maryland held that the denial of the defendants' jury trial request was error. *Id.* at 610. It held that when the defendants, who were entitled to a jury trial, demanded a jury, the District Court was deprived of jurisdiction and the circuit court acquired jurisdiction. *Id.* The Court held that once the circuit court obtained jurisdiction of the charges, it had exclusive jurisdiction over all the

---

[11] The State had previously sought to avoid divestiture of the District Court's jurisdiction by announcing, consistent with what is now CJP section 4-302(e)(2)(ii), that the State did not intend to seek a sentence greater than ninety days—a limitation with which the administrative judge agreed; however, the administrative judge could not guarantee the trial judge would agree to the same. *Huebner*, 305 Md. at 603–04. While the case remained pending in District Court, the Supreme Court of Maryland issued an opinion holding that what is now CJP section 4-302(e)(2)(ii) could not be used to deny a jury trial to a defendant when that defendant is charged with an offense to which the Maryland Declaration of Rights guaranteed a jury trial. *Id.* at 605 (citing *Kawamura v. State*, 299 Md. 276, 294–95 (1984)).

15

offenses arising from the same circumstances, and the circuit court's jurisdiction could not thereafter be divested, nor the case returned to the District Court. *Id.*

Appellant claims that *Huebner* stands for the proposition that there is a mechanism to prevent the circuit court from acquiring jurisdiction—namely, that if the District Court determines that a defendant is not entitled to a jury trial, then the jurisdiction of the District Court can be reinstated. We read *Huebner* differently. *Huebner* allows for reinstatement of District Court jurisdiction only if the question of entitlement to a jury trial is resolved against the defendant, or in other words, when it is determined that the defendant is not entitled to a jury trial. 305 Md. at 612. *Huebner* charges a District Court with determining whether a defendant is entitled to a jury trial when that issue is disputed. *Id.* at 611–12. However, there is no dispute in this case that Appellant was entitled to a jury trial, as exemplified by the charges in the case and the State's acquiescence to the request for the jury trial. Thus, *Huebner* supports the determination that jurisdiction once divested from the District Court by the jury demand of an entitled defendant cannot be reinvested in the District Court thereafter.

Appellant's reliance on *Bromberg* is likewise misplaced. Appellant frames *Bromberg* as holding that "when the original jurisdiction is in the District Court and it is not divested of such jurisdiction by proper jury trial prayer, any conviction imposed by the [c]ircuit [c]ourt is a nullity." In our reading, the issue in *Bromberg* was not whether the jury prayer from the District Court was "proper"; instead, the issue was whether the defendant

was entitled to request a jury trial.[12] 265 Md. App. at 539, 541. This Court held in *Bromberg* that because the defendant was not entitled to a jury trial, the District Court retained its jurisdiction and thus the circuit court never acquired jurisdiction. *Id.* at 541. For those reasons, this Court held that the convictions in the circuit court were a nullity. *Id.* at 545.

The circumstances in *Bromberg* are different from those arising *sub judice*. As explained *supra*, due to Appellant's charges and the associated penalties, he was, by statute, entitled to request a jury trial, and once that request was made, the circuit court acquired jurisdiction. By contrast, *Bromberg* voided the defendant's convictions because the defendant was statutorily ineligible to request a jury trial, and the circuit court therefore never acquired jurisdiction. *Id.* at 540–41, 545. Thus, while *Bromberg* authorizes nullification of a conviction and remand in circumstances where the circuit court lacked subject matter jurisdiction entirely, that was not the case here. Because the circuit court acquired subject matter jurisdiction, jurisdiction could not be reinvested in the District Court.[13]

---

[12] Because the potential penalty for the defendant's charges did not meet the threshold identified in CJP section 4-301(e)(2), the defendant in *Bromberg* was not entitled to a jury trial. 265 Md. App. at 540–41.

[13] Appellant argues alternatively that even if the circuit court had subject matter jurisdiction, this Court should conclude that the circuit court improperly exercised its jurisdiction, and therefore, retrial should be barred under double jeopardy principles. However, Appellant propounds that the exercise of jurisdiction was improper because the circuit court "knew that the jury trial request was done improperly and refused to remand the case to [D]istrict [C]ourt." This position is merely a reiteration of Appellant's argument that the circuit court lacked subject matter jurisdiction, which we have rejected. The circuit court had, and properly exercised, subject matter jurisdiction. Therefore, retrial is not barred. *Cf. Bromberg*, 265 Md. App. at 544–45 (citing *Parks v. State*, 287 Md. 11, 19 (1980)).

*iii. Appellant's former counsel acted with implied authorization to effectuate the jury demand.*

Appellant contends that the jury demand is invalid because, he alleges, it was made without his knowledge or consent.[14] Setting aside the appropriateness of this argument for direct appeal rather than a post-conviction proceeding, we note that the agency principles inherent in an attorney-client relationship remain present in representation in criminal matters. *See Hogan v. State*, 240 Md. App. 470, 495–96 (2019). As this Court has stated:

> When an attorney represents a client in the trial of a lawsuit, the attorney . . . is not a party to the lawsuit and . . . is not a stranger to his client . . . . *The attorney is the agent of the client*. With limited exceptions not here pertinent, *the defense attorney, therefore, is authorized by basic principles of agency to make decisions for a defendant that are binding on the defendant*.

*Dyson v. State*, 122 Md. App. 413, 417 (1998), (emphasis added) *rev'd on other grounds sub nom.*, *Maryland v. Dyson*, 527 U.S. 465 (1999). More recently, this Court has confirmed that attorneys in criminal cases may act on behalf of defendants, noting that "[t]he actions of counsel in this regard, moreover, are binding on a defendant and are not sapped of vitality simply because the defendant has not directly or personally participated in the decision-making process." *Hogan*, 240 Md. App. at 495 (quoting *Dyson*, 122 Md. App. at 419). Moreover, under Maryland Rule 19-301.2(a), an attorney may "take such action on behalf of the client as is impliedly authorized to carry out the representation."

---

[14] We note that while Appellant repeated this assertion at length and on multiple occasions in the circuit court, none of those assertions were made in testimonial form. Moreover, Appellant's former counsel did not have an opportunity to address the assertions, and the record does not provide testimony or evidence directly related to Appellant's allegations of his former counsel's ineffectiveness. *See Mosley v. State*, 378 Md. 548, 559–60 (2003) (citations omitted).

18

There are certain categories of representation in which an attorney is required to abide by the client's decision. *Id.* For criminal cases, the rule identifies these categories as "the client's decision, after consultation with the attorney, as to a plea to be entered, whether to waive jury trial[,] and whether the client will testify." *Id.* While the rule specifically identifies the client's decision to waive a jury trial as a decision that must be made by the client, the rule does not include the invocation of a defendant's right to a jury trial as an action outside those that attorneys are impliedly authorized to take. *See id.*[15]

Here, Appellant's attorney was not a party to the case, and the jury demand was not made for counsel himself but for Appellant. *See Dyson*, 122 Md. App. at 417. Appellant's counsel had implied authorization to carry out representation on Appellant's behalf, to include the invocation of a jury demand. *See Hogan*, 240 Md. App. at 495; Md. Rule 19-301.2(a). While Appellant may argue, as he did to the circuit court, that this invocation was ineffective representation, that argument is best left to a post-conviction proceeding. *Mosley v. State*, 378 Md. 548, 560 (2003) ("Post-conviction proceedings are preferred with respect to ineffective assistance of counsel claims because the trial record rarely reveals why counsel acted or omitted to act, and such proceedings allow for fact-finding and the introduction of testimony and evidence directly related to allegations of the counsel's ineffectiveness.").[16]

---

[15] We note that the rule governing waiver of a jury trial in circuit court does not prevent a defendant who prayed a jury trial in District Court from subsequently waiving it in the circuit court. *See* Md. Rule 4-246.

[16] Although a convicted person may raise a claim of ineffective assistance of counsel on direct appeal, appellate courts generally do not review such claims unless in "exceptional

Because Appellant's attorney had implied authority to request a jury trial on Appellant's behalf, the request for a jury trial was effective to divest the District Court of jurisdiction. *See Hogan*, 240 Md. App. at 495; Md. Rule 19-301.2(a).

iv.       *The jury demand was made in compliance with the Maryland Rules.*

We next examine Appellant's contention that the jury demand was not made in compliance with Maryland Rule 4-301(b), and that this alleged defect likewise defeats the circuit court's jurisdiction. Maryland Rule 4-301(b) governs the form and procedure by which a jury demand is to be made in the District Court. The Rule dictates that if a demand for a jury trial is in writing, "unless otherwise ordered by the court or agreed by the parties," the demand must be filed no later than fifteen days before the scheduled trial date. Md. Rule 4-301(b)(1).

Appellant asserts that the jury demand in this case was not made in compliance with the rules because the demand was made less than fifteen days before trial, and he, as one of the parties who must agree, did not consent to the demand being filed late. This argument is based on the misapprehension that Appellant's former attorney did not have implied authorization to request a jury on Appellant's behalf. As outlined *supra*, Appellant's former

---

cases" where the trial record is sufficient to reveal counsel's ineffectiveness, and that ineffectiveness is "so blatant and egregious that review on appeal is appropriate." *Mosley*, 378 Md. at 562 (internal citation and quotation marks omitted). However, appellate courts should only undertake review of ineffective assistance of counsel claims on direct appeal if "the facts found in the trial record are sufficiently developed to clearly reveal ineffective assistance of counsel and that counsel's performance adversely prejudiced the defendant." *Id.* at 567 (citing *In re Parris W.*, 363 Md. 717, 726 (2001)). Here, the record reveals neither ineffective assistance nor prejudice. Therefore, here, a review of an allegation of ineffective assistance of counsel is not appropriate on direct appeal. *See Mosley*, 378 Md. at 567.

counsel had implied authority to carry out representation on Appellant's behalf, including to demand a jury and to obtain consent for and to the filing with less than fifteen days before trial. *See Dyson*, 122 Md. App. at 417; *Hogan*, 240 Md. App. at 495; Md. Rule 19-301.2(a). In addition, not only did the State consent, but likewise the State did not object to the late-filed jury demand. Therefore, the parties agreed to the filing of a request for a jury trial less than fifteen days before trial,[17] and the filing was in compliance with Maryland Rule 4-301(b).

We note further that Maryland Rule 4-301(b) elucidates the form and procedure by which a jury demand may transmit a case from District Court to circuit court, which is a procedural rather than jurisdictional matter. *See* CJP § 4-302(e)(1) ("The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial *at any time prior to trial* in the District Court.") (emphasis added); *cf. Mailloux*, 261 Md. App. at 224 (quoting *Powell v. State*, 324 Md. 441, 446 (1991)) (explaining that a similar rule addressing a procedural matter and regulating the movement of cases from the District Court to the circuit court "*does not* control the fundamental jurisdiction of the circuit courts[]") (emphasis in *Mailloux*) (brackets and internal quotation marks omitted).

Hence, we find the circuit court properly exercised subject matter jurisdiction.

---

[17] In addition, the District Court signed "granted" on the jury trial prayer.

21

## II. THE EVIDENCE ADDUCED AT TRIAL WAS SUFFICIENT TO SUSTAIN APPELLANT'S CONVICTIONS FOR SECOND-DEGREE ASSAULT.

### A. Additional Facts

Following the conclusion of the State's case, Appellant moved for a judgment of acquittal, stating the following:

> Even in the light most favorable to the State, I believe the testimony was that [Appellant] was there [for] fifteen [to] twenty minutes, there was a dispute about . . . money owed to him. The witness testimony was that he was getting frustrated with [Appellant], he was trying to get to Walmart, he had to come back to work to deal with what he thought was not a real debate. He actually testified that during the whole situation, and towards the end of it, he was beginning to get geared up, I think that terminology is important. Geared up . . . , then when [Appellant] did go around to the back, although the [c]ourt's said [Snyder and Geibel] don't need to retreat, the two boys were in front of each other, there [were] no movements . . . by the alleged victims to show that they did not want to participate in the encounter that happened. . . . [T]hat being said, I don't believe the State has at this juncture established a prima facie case of an assault[.]

The court denied the motion, ruling that based on the testimony and the video, there was adequate evidence in a light most favorable to the State that the elements had been met. When Appellant renewed his motion at the conclusion of his case, he did not make any further argument. The court added when denying the renewed motion that although the State did not elicit testimonial evidence from the victims regarding whether they consented to being struck, the video provided evidence from which the jury could infer that Snyder and Geibel did not consent to or intend to be the recipients of Appellant's strikes.

### B. Party Contentions

Appellant asserts that the evidence adduced at trial was insufficient to sustain his convictions. He claims this is so because the evidence demonstrates that Snyder and Geibel

22

did not retreat and were participants in the exchange. He further posits that the State failed to prove that the physical contact from Appellant to Snyder and Geibel was not consented to or legally justified.

The State contends that Appellant's argument is not preserved because the grounds identified on appeal were not raised at the circuit court in the motion for judgment of acquittal. The State asserts that if considered, sufficient evidence was presented at trial from which a rational juror could conclude that neither Snyder nor Geibel consented to being hit by Appellant with a closed fist.

Appellant's reply brief does not address the State's assertion that the issue of sufficiency is not preserved.

## C. Preservation

Appellate courts ordinarily "will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." *Small v. State*, 235 Md. App. 648, 696 (2018) (quoting Md. Rule 8-131(a)), *aff'd*, 464 Md. 68 (2019). Under Maryland Rule 4-324(a), "a criminal defendant who moves for judgment of acquittal must state with particularity all reasons why the motion should be granted, and is not entitled to appellate review of reasons stated for the first time on appeal." *Leo v. State*, 268 Md. App. 63, 106 (2025) (quoting *Redkovsky v. State*, 240 Md. App. 252, 261 (2019)) (internal brackets, quotation marks, and further citation omitted). "The issue of sufficiency of the evidence is not preserved when the defendant's motion for judgment of acquittal is on a ground different from the one set forth on appeal." *Winston v. State*, 235 Md. App. 540, 574 (2018) (citation omitted). However, a motion for judgment of acquittal "may be

23

sufficient to preserve an issue where the acquittal argument generally includes the issue raised on appeal." *Leo*, 268 Md. App. at 106 (quoting *Redkovksy*, 240 Md. App. at 261–62).

On appeal, the crux of Appellant's argument is that the evidence adduced at trial was insufficient to sustain his convictions for assault because, in his view, the evidence demonstrated that Snyder and Geibel willingly participated in the physical encounter with Appellant and did not testify regarding their lack of consent to the punches. In Appellant's view, the evidence therefore fails because the State did not prove an element of the battery variety of assault (i.e., that the contact was not consented to). The State asserts that Appellant failed to make a precise argument in the circuit court in support of the motion for acquittal. Specifically, the State contends that in the circuit court, Appellant did not identify the elements he contended were not established by the State, and therefore, he cannot expound on that general theory before this Court.

Maryland Rule 4-324(a) requires that a motion for judgment of acquittal be stated with particularity. *Leo*, 268 Md. App. at 106. However, where an acquittal argument generally includes the issue raised on appeal, the motion for acquittal may be adequate for preservation. *Id.* (citing *Redkovsky*, 240 Md. App. at 261–62). Here, in arguing that the State had failed to make a *prima facie* case of assault, Appellant contended that the evidence showed that Snyder and Geibel were frustrated with Appellant and demonstrated their desire to participate in the encounter. Although this argument was not as developed as the version of the argument presented on appeal, the essential elements of the argument on appeal are rooted in the same concept—that the State did not provide evidence that the

24

physical contact was objected to in light of Snyder's and Geibel's participation in the encounter. We conclude, therefore, that Appellant's sufficiency claim is preserved. *See Leo*, 268 Md. App. at 106.

### D. Analysis

We next turn to the merits of Appellant's sufficiency claim. Appellate courts review sufficiency of evidence rulings based on whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. McGagh*, 472 Md. 168, 194 (2021) (quoting *State v. Manion*, 442 Md. 419, 430 (2015), in turn quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). The question is not whether the reviewing court would have believed the evidence at trial established guilt beyond a reasonable doubt; rather, the only concern of the reviewing court is "whether the verdict was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Id.* (quoting *Taylor v. State*, 346 Md. 452, 457 (1997)).

This deferential standard recognizes the better position held by the trier of facts to "assess the evidence and credibility of the witnesses." *Id.* (citing *Smith v. State*, 415 Md. 174, 184–85 (2010)). Accordingly, we conduct this review with the understanding that it is the role of the fact finder rather than the reviewing court to choose among differing inferences that arise in a factual situation. *Smith*, 415 Md. at 183. In conducting a review of a claim of insufficient evidence, we do not "re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence." *Id.* at 185 (citations omitted). Rather, we review both the evidence and "all reasonable inferences deducible from the evidence in a

light most favorable to the State." *Id.* at 185–86 (citing *Allen v. State*, 402 Md. 59, 77 (2007)).

In this case, Appellant challenges his convictions for second-degree assault. "Second-degree assault is a statutory crime that encompasses the common law crimes of assault, battery, and assault and battery." *Quansah v. State*, 207 Md. App. 636, 646 (2012) (citing CL § 3-203(a) and § 3-201(b)). The battery variety of second-degree assault "is committed by causing offensive physical contact with another person." *Lewis v. State*, 263 Md. App. 631, 647 (2024) (quoting *Nicolas v. State*, 426 Md. 385, 403 (2012)). To prove the battery form of second-degree assault, the State must demonstrate: "(1) that the defendant caused offensive physical contact with the victim; (2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental;[18] and (3) that the contact was not consented to or legally justified." *Pryor v. State*, 195 Md. App. 311, 335 (2010) (emphasis omitted) (citing MPJI-CR 4:01C).

Here, the evidence and deducible inference adduced at trial—viewed in a light most favorable to the State, *see Smith*, 415 Md. at 185–86—consisted of the testimony from Snyder, Geibel, and the video footage documenting the event. Snyder testified that after not receiving a full refund of the funds placed on the wrong fuel pump, Appellant walked around the register "into the employee only zone and started throwing punches." Snyder

---

[18] The battery can be intentional or unintentional. *Lewis*, 263 Md. App. at 647. An intentional battery requires that the defendant "committed the act with the specific intent to injure the victim, even if the injury intended is slight." *Id.* at 647–48 (citing *Lamb v. State*, 93 Md. App. 422, 455 (1992)). An unintentional battery requires that the defendant "had the general intent to commit the criminally negligent act without any thought as to the consequences of doing so[.]" *Id.* at 648 (citation omitted).

further testified that Appellant punched him "right behind the left side of [his] jaw[,]" an injury for which Snyder sought medical attention.

Geibel testified that he was struck by Appellant, causing his glasses to fly off his face. Geibel further testified that during his verbal interaction with Appellant preceding the physical part of the interaction, he had not made any aggressive actions towards Appellant. Both Snyder and Geibel testified that they, with the assistance of another customer, subsequently had to push Appellant to get him out of the store.

The Royal Farms surveillance footage further showed Appellant leaning across the counter, grabbing the receipt out of Geibel's hand, and knocking over the screen for the register. The footage also showed Appellant walking behind the counter, where he proceeded to make a fist with his hand and strike Snyder and Geibel. While the footage showed Snyder, Geibel, and the intervening customer placing their hands on Appellant to move him out of the employee-only area and towards the store exit, the video footage did not show that physical intervention occurring until after Appellant had escalated the interaction from verbal to physical by striking Snyder and Geibel.

Based on this evidence, a jury could reasonably have inferred that Appellant, by making a fist and punching Snyder and Geibel, either recklessly or intentionally, acted to cause an offensive contact. *See Snyder v. State*, 210 Md. App. 370, 386–87 (2013) (citing *Chilcoat v. State*, 155 Md. App. 394, 403 (2004)) ("[A] jury may infer as defendant's intent the natural and probable result of his actions[.]"); *see also Lewis*, 263 Md. App. at 647–48. Moreover, the evidence reflected that Appellant escalated the interaction from verbal to physical by reaching across the counter to grab the receipt from Geibel and by entering the

27

employee-only zone behind the counter and striking Snyder and Geibel. The evidence supports the conclusion that Snyder and Geibel did not physically engage with Appellant until after he punched them, and that their response was limited to pushing Appellant out of the store. From this evidence and the associated deducible inferences, taken in a light most favorable to the State, a jury could reasonably have inferred that Snyder and Geibel did not consent to being struck by Appellant. *See Smith*, 415 Md. at 185–86; *see also Pryor*, 195 Md. App. at 335.

Appellant contends that the evidence also shows an alternate version of events, where Geibel's and Snyder's actions, coupled with the absence of testimony that they did not consent to being struck by Appellant, could support a different outcome. However, that an alternative interpretation of the evidence could exist is irrelevant to our analysis. The jury was not required to accept the version of facts most favorable to Appellant; the standard is whether, when the evidence is viewed in a light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McGagh*, 472 Md. at 194 (quoting *Manion*, 442 Md. at 430, in turn quoting *Jackson*, 443 U.S. at 319) (emphasis in original). To the extent multiple inferences are available from the evidence presented at trial, we do not "re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence" as that is the role of the fact finder rather than of the reviewing court. *Smith*, 415 Md. at 185.

Because the second-degree assault verdicts were supported by substantial evidence in the record, there is sufficient evidence to sustain and therefore affirm Appellant's convictions. *McGagh*, 472 Md. at 194.

28

**III.** **THE CIRCUIT COURT DID NOT ERR IN OVERRULING APPELLANT'S OBJECTION TO TESTIMONY APPELLANT ELICITED.**

**A. Additional Facts**

Throughout the trial, one of Appellant's theories of the case was that Snyder and Geibel had mutually participated in a physical altercation and that they failed to retreat. To that end, during his cross-examination of Geibel, Appellant sought to elicit testimony demonstrating that Geibel was frustrated with Appellant, and ostensibly, that Geibel had a desire to engage in a physical altercation. The following exchange ensued:

> [Appellant]: Do you recall yourself, your co-worker Mr. Synder and another [customer] being physical with you?
>
> [Geibel]: Being physical with you, no. Only if they were physical with us, so just defending us.
>
> * * *
>
> [Appellant]: Do you recall saying anything to me during this encounter?
>
> [Geibel]: I was yelling at you to get . . . out of my store.
>
> [Appellant]: Is that store policy?
>
> * * *
>
> [Geibel]: No, I don't know.
>
> [Appellant]: Do you normally talk to customers that way?
>
> [Geibel]: No, I do not.
>
> [Appellant]: Does it normally offend you when a customer has an issue? A legitimate . . . complaint?
>
> [Geibel]: A legitimate complaint, no it does not.
>
> [Appellant]: And addresses it with the store staff?

29

[Geibel]: No, that is . . . what they're supposed to do, so we can fix the problem.

[Appellant]: So, how come you testified here today that after you got the phone call about a customer with a legitimate store [complaint] that you were frustrated that you had to come back?

[Geibel]: Honestly because you are a big problem in Denton. And I knew it was you right off the bat.

Appellant objected. The court overruled the objection, noting that Appellant had opened the door by asking the question he posed. No motion was made with respect to this testimony, and neither party mentioned the statement again in the remaining trial proceedings.

## B. Party Contentions

Appellant asserts that Geibel's statement—that Appellant was "a big problem in Denton"—was not relevant and was therefore inadmissible. Appellant contends that the statement constitutes a collateral issue and did not qualify as a statement permitted under the opened door doctrine. He claims that the error was not harmless beyond a reasonable doubt because it constituted reputational evidence from which the jury could infer that Appellant was a problematic feature in the town beyond what happened in the Royal Farms on the day in question. In his reply brief, Appellant compares Geibel's comment with labels such as "monster," "animal," and "pervert" which have been held to be inappropriate when applied to defendants in criminal cases.

The State asserts that Geibel's statement was relevant to a line of questioning Appellant was propounding concerning Geibel's return to the Royal Farms and the motivation behind his interaction with Appellant. The State contends that the testimony

30

elicited was relevant to Appellant's defense that Geibel and Snyder "acted in a way that invited [Appellant] to physically engage with them." The State further claims that any prejudice produced by Geibel's statement was minimal and did not outweigh the statement's probative value. The State posits that if there was any error in admitting the statement, the error was harmless.

## C. Standard of Review

Appellate review of a court's decision to admit evidence "involves a two-step analysis." *Vangorder v. State*, 266 Md. App. 1, 18 (2025). The first step requires determination of "whether the evidence was relevant, which is a conclusion of law that we review *de novo*." *Id.* (citing *Montague v. State*, 471 Md. 657, 673 (2020)). If the reviewing court determines that the evidence was relevant, "we proceed to the second step, which is whether the court abused its discretion in admitting the evidence." *Id.* at 19 (citing *Williams v. State*, 457 Md. 551, 563 (2018)).

## D. Analysis

Under Maryland Rule 5-402, unless an exception applies, "all relevant evidence is admissible." Conversely, "[e]vidence that is not relevant is not admissible." *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401. "To be relevant, evidence must tend to establish or refute a fact at issue in the case." *Vangorder*, 266 Md. App. at 18 (quoting *Merzbacher v. State*, 346 Md. 391, 404 (1997)). "Having 'any tendency' to make 'any fact' more or less probable

31

is a very low bar to meet." *Montague*, 471 Md. at 674 (quoting *Williams*, 457 Md. at 564) (further citation omitted).

While a trial court does not have discretion to admit irrelevant evidence, *State v. Simms*, 420 Md. 705, 724 (2011), a trial court has discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Md. Rule 5-403. "Probative value is substantially outweighed by unfair prejudice when the evidence 'tends to have some adverse effect beyond tending to prove the fact or issue that justified its admission.'" *Vangorder*, 266 Md. App. at 18 (quoting *State v. Heath*, 464 Md. 445, 464 (2019)) (ellipses and further citation omitted).

Here, Appellant was charged with assault, and part of his defense was that Snyder and Geibel were hostile towards him and consented to engaging physically with him. To that end, Appellant elicited testimony from Geibel establishing that Geibel yelled at Appellant in a manner that deviated from Geibel's normal interactions with customers. Appellant then asked why Geibel, after receiving the phone call summoning him back to the Royal Farms to handle a customer complaint, was frustrated that he needed to return. In response, Geibel stated that Appellant was "a big problem in Denton" and that Geibel knew the phone call was about Appellant "right off the bat." Geibel's answer to that question was probative because it tended to establish a fact at issue in the case—i.e., that Geibel was frustrated with or hostile towards Appellant and thus Geibel was willing to consent to physical engagement. *See Vangorder*, 266 Md. App. at 18; Md. Rule 5-401. Accordingly, Appellant's question was relevant because it had a tendency to make the existence of a fact of consequence more probable than it would be without the evidence.

32

Md. Rule 5-401. Geibel's answer, which was responsive to Appellant's question, was likewise relevant for the same reason.

The State asserts that the danger of unfair prejudice posed by Geibel's answer was minimal and did not outweigh the statement's probative value. "Probative value is outweighed by the danger of unfair prejudice when the evidence produces such an emotional response that logic cannot overcome prejudice or sympathy needlessly injected into the case." *Harford Mem. Hosp., Inc. v. Jones*, 264 Md. App. 520, 549 (internal quotation marks omitted) (quoting *CSX Transp., Inc. v. Pitts*, 203 Md. App. 343, 373 (2012), *aff'd*, 430 Md. 431 (2013)), *cert. denied*, 490 Md. 640 (2025). In balancing probative value of evidence against potential prejudice, a trial court considers that "the fact that evidence prejudices one party or the other, in the sense that it hurts his or her case, is not the undesirable prejudice referred to in Rule 5-403." *Burris v. State*, 435 Md. 370, 392 (2013) (quoting *Odum v. State*, 412 Md. 593, 615 (2010)) (further citation omitted). "Rather, evidence is considered unfairly prejudicial when it might influence the jury to disregard the evidence or lack of evidence regarding the particular crime with which the defendant is being charged." *Id.* (internal brackets, quotation marks, and further citation omitted).

Here, Geibel's statement was in response to Appellant's question as to why Geibel personally was frustrated upon receiving a call to return to the store to handle a customer complaint. Geibel's response included the statement that Appellant was "a big problem in Denton" and that Geibel knew the customer was Appellant "right off the bat" which we find to be limited and responsive when viewed in context. Notably, there was no discussion

of what Geibel meant by a "big problem"; nor was there a suggestion that being a "big problem" had anything to do with criminality. Further, as noted above, the evidence elicited could be viewed as supportive of Appellant's defense that Geibel was hostile to him and was thus more likely to have consented to engage in a physical altercation. Appellant claims that until Geibel's statement, "the evidence was limited only to what occurred in the store between them."[19] Appellant suggests that Geibel's statement implies that Appellant is a problem of the entire town and that this evidence "allowed the jury to believe that Appellant was more likely guilty of this crime because he was a 'big problem in Denton' and 'everyone' knew it." We disagree; Geibel's generic comment does not appear to be in the category of evidence that would elicit "such an emotional response that logic cannot overcome prejudice or sympathy needlessly injected into the case." *See Jones*, 264 Md. App. at 549 (citations omitted). Nor does the evidence appear to have "influence[d] the jury to disregard the evidence or lack of evidence regarding the particular crime with

---

[19] We note that the other evidence in the record related to Appellant's prior interactions with Snyder and Geibel was admitted without objection in the following exchange during Appellant's cross-examination of Snyder:

[Appellant]: Have you ever been in [the] store prior to this incident a[t] the same time as myself?
[Snyder]: Prior to this incident, yes.
[Appellant]: And have I ever been rude or belligerent to any one of you in that store prior to this incident?
[Snyder]: Yes.
[Appellant]: I have?
[Snyder]: Yes sir.
* * *
[Snyder]: You actually came in one day, and blatantly you were boasting about how you don't care about being into fights, how you've been in court and you've punched a bailiff in the face.

34

which [Appellant was] charged[,]" particularly in light of the jury's acquittal of Appellant on the charge of malicious destruction of property. *See Burris*, 435 Md. at 392; *cf. Williams*, 457 Md. at 572 (in considering a balance of probative value compared to unfair prejudice, the Supreme Court of Maryland noted the jury's acquittal on "numerous other offenses" with which the defendant had been charged).

Because the testimony was responsive to the question posed by Appellant which was relevant as it was probative of a fact at issue in the case, and because the potential for unfair prejudice did not outweigh the probative value, Geibel's testimony was relevant, and the trial court did not abuse its discretion in allowing it.[20, 21]

---

[20] In overruling Appellant's objection to Geibel's testimony, the court stated that Appellant had opened the door to the receipt of that testimony. We have affirmed the admission of the testimony on relevance. The opened door doctrine exists within the realm of relevance, and we do not reach the issue on its merits. *See State v. Heath*, 464 Md. 445, 459 (2019). The Supreme Court of Maryland has explained that the doctrine authorizes admittance of evidence "which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue, or (2) inadmissible evidence admitted by the court over objection." *Id.* (citation omitted). The Court described the doctrine as a "remedy" for a situation in which one party introduces evidence that was irrelevant over objection or was relevant, but which generates a new issue. *Id.* The remedy allows the party who did not first open the door to introduce evidence on the issue to ensure the opportunity for a fair response. *Id.* The doctrine applies equally to "opening statements, witness examination, and closing arguments." *Little v. Schneider*, 434 Md. 150, 161 (2013). In this case, although Appellant was introducing admissible evidence generating a new issue (i.e., Geibel's frustration with Appellant and, by association, willingness to physically engage with Appellant), the open door remedy has little to do with the evidence that Appellant elicited. However, as we have noted *supra*, the evidence was relevant to Appellant's defense, and the court did not abuse its discretion in admitting the evidence.

[21] Appellant argues that Geibel's statement was also inadmissible because it was evidence of reputation and bad character. This argument is not preserved, as the basis for the objection and ruling on Geibels's statement respectively concerned the statement's veracity and relevance. Because the issue of character evidence was not raised in or decided by the trial court, we need not address it. *See* Md. Rule 8-131(a); *Ray v. State*, 435 Md. 1, 20

## IV. THE CIRCUIT COURT DID NOT ERR IN SENTENCING APPELLANT.

### A. Additional Facts

Prior to the sentencing hearing, the court ordered a pre-sentencing investigation, which was completed in July of 2024. At the sentencing hearing, both Appellant and the State argued for sentences other than that which was recommended in the pre-sentence investigation report. The State argued that the present convictions would constitute the "fifth and sixth conviction of [Appellant] for second-degree assault." Following an objection by Appellant, the State noted four prior convictions of Appellant for second-degree assault, the most recent of which was against a Department of Corrections employee in 2019. The State continued, addressing prior convictions for reckless endangerment, escape, and disorderly conduct, arguing that in light of the convictions and Appellant's multiple probation violations, he was not amenable to treatment options. The State then referenced an incident where Appellant was alleged to have sat across the street from the

---

(2013). Even if we were to consider Appellant's argument based on his general objection before the trial court's ruling, we would hold that Geibel's statement was not character evidence. The use of character evidence is prohibited for the purpose of showing a person's propensity to act in accordance with their character traits or prior bad acts. *Woodlin v. State*, 484 Md. 253, 260–61 (2023); *see also* Md. Rule 5-404(b). This prohibition "is to avoid tainting the jury into thinking that the defendant is a bad person 'who should be punished regardless of his or her guilt of the charged crime, or to infer that he or she committed the charged crime due to a criminal disposition.'" *Woodlin*, 484 Md. at 265 (quoting *Thompson v. State*, 412 Md. 497, 503 (2010) (brackets and further citation omitted). The evidence elicited here was not uttered for the suggestion that Appellant had the character of being "a big problem in Denton" or that his actions on August 12, 2023 were consistent with such a character trait. Rather, Geibel's statement was offered to explain why Geibel was frustrated with Appellant upon returning to the store—testimony Appellant sought to elicit to support his defense that Geibel and Snyder willingly engaged in a physical altercation with him.

Royal Farms in what the prosecutor described as "an attempt by [Appellant] to intimidate" one of the witnesses. Appellant and his counsel objected to this statement, and the court indicated that "this [was] just argument." The State requested, in light of Appellant's history of violence and probation violations, that the court sentence Appellant to ten years for each assault conviction and for the sentences to run consecutively.

Appellant's counsel argued for the court to impose a sentence of no more than eighteen months of incarceration. Appellant highlighted the lack of danger to the general public, emphasizing that the assaults in this case were not "random[]" but rather were due to the Royal Farms employees engaging in an argument with Appellant. Appellant further asserted that the injuries were "minimal[.]" Appellant contended that the facts of this case did not merit a lengthy prison sentence and instead suggested that Appellant could benefit from assistance with substance use evaluation and mental health treatment.

Appellant also offered allocution. He indicated that he did not feel he had been provided with assistance in the past, stating that "the only thing this court system and any other court system has offered me as a man of color has been a period of incarceration." He noted that previous releases were done without supervision, and he had not received treatment while incarcerated because his prior sentences were not long enough to qualify him for institutional help. In describing his prior convictions for second-degree assault, Appellant explained that some could be violations of probation from prior second-degree assault convictions rather than new assault convictions. Appellant continued, stating that "I'm not out in the community terrorizing the community. I don't do things to people, or haven't done things to people that didn't provoke or do something to me, I assure you. I'm

37

not a violent offender." He then stated that the reason he had not sought mental health treatment was that he did not want to forfeit his right to keep and bear arms. Appellant observed that mental health treatment may take a higher priority at this time in his life. He asked the court to sentence him within the recommendation of six months to two years, and to suspend incarceration time to allow him to obtain court-ordered treatment.

The court then stated the following:

> [T]he [c]ourt has . . . considered what is in the [p]re-[s]entence [i]nvestigation, [Appellant] indicated that he essentially agrees with the contents of that. The [c]ourt has considered the circumstances of this case, as well as [Appellant] the [d]efendant and how he comes to the [c]ourt. The [c]ourt has considered arguments of [c]ounsel and the allocution of [Appellant].

The court then described Appellant's criminal history as set out in the pre-sentence investigation report. The court also discussed Appellant's history of second-degree assaults and probation violations, noting the following:

> [I]n November of 2006[22] in Caroline County he was convicted of assault in the second degree, given a sentence of two years, one year eleven months was suspended, meaning it was a thirty day active sentence, [and] there were two years of probation. That probation was ultimately violated. The [c]ourt will note a special condition of that probation was to attend and successfully completed anger management. June 16th of 2007 he was charged in Anne Arundel County with operating an off[-]road vehicle on private property [and] given a ninety day sentence . . . which was suspended and one year [of] unsupervised probation. July of 2007 in Caroline County he was convicted[23] of reckless endangerment, given a sentence of three years to the Division of Corrections. In September of 2007[,] a couple months later, he was

---

[22] Based on the pre-sentence investigation report, it appears the offense to which the court referred involved an arrest of Appellant in November of 2005, which resulted in a conviction in 2006.

[23] Appellant was arrested in July of 2007 for this offense; according to the pre-sentence investigation report, the disposition was in January of 2008.

convicted[24] of assault in the second degree in Caroline County. He was given [a] sentence of four years, that was suspended, it was consecutive to the reckless endangerment case. Placed on three years['] probation. The [c]ourt will note the special conditions of that probation were to attend and successfully complete mental health treatment, along with other special conditions such as substance abuse treatment and such. He did violate probation and that probation case was closed as unsatisfactory. In November of 2007 he was convicted[25] of assault in the second degree in Caroline County Circuit Court[,] given a sentence of four years, suspended, it was consecutive to another sentence. Three years['] probation, that probation was also violated and he ultimately served six months in the [d]etention [c]enter based on that violation and the probation case was closed as unsatisfactory. In July of 2011 in Talbot County he was convicted[26] of reckless endangerment, given a sentence of one year, that was suspended, two years['] probation. He did violate that probation and received a sentence of one year. In January of 2012 in Caroline County he was convicted[27] of escape in the second degree, given a sentence of thirteen months, it was consecutive to another sentence. [Appellant] on the PSI reported that he incurred the charge of escape intentionally so he could serve his time at the Division of Corrections instead of locally. He was paroled on March 23 . . . of 2013. And the case was closed ultimately as satisfactory.

The court continued, stating

[H]e was arrested on April 20th, 2012, in Cecil County[,] he was convicted of assault in the second degree, that was an assault upon a correctional officer, he was found guilty [and] given a sentence of sixty days.

---

[24] Appellant was arrested in September of 2007 for this offense; according to the pre-sentence investigation report, the disposition was in March of 2008.

[25] Appellant was arrested in November of 2007 for this offense; according to the pre-sentence investigation report, the disposition was in March of 2008.

[26] Appellant was arrested in July of 2011 for this offense; according to the pre-sentence investigation report, the disposition was in November of 2011.

[27] Appellant was arrested in January of 2012 for this offense; according to the pre-sentence investigation report, the disposition was in August of 2012.

The court then described convictions for two incidents involving resisting arrest, one in Caroline County and one in Queen Anne's County, which were vacated and for which the State entered nol prosses on remand. The court continued, stating:

On June 10th of 2019, [in] Queen Anne's County[,] he was charged with assault in the second degree, that assault was upon a Division of Correction[s] employee, he was found guilty, given one year, and one day in jail.

The court noted one further probation disposition before judgment for a natural resources violation from July of 2022. The court then made the following remarks:

I view sentencing as a continuum . . . in most cases with the lower end of the continuum being [that] we want to seek to rehabilitate the person who has been convicted and do what we can . . . as you move along that continuum or up that continuum[,] we want to make sure that sentencing . . . certainly deters the person involved . . . who was convicted[,] but also deters others . . . . [A]nd then ultimately at the end of that continuum . . . is where public safety becomes paramount. The State has to worry about public safety, safety of others and then at that point, certainly incarceration is focused on that. The [c]ourt does believe . . . that [Appellant] has been given opportunities, encouragement from the [c]ourts over the years, including specific directions for anger[] management or mental health treatment . . . [and] those close to him that were interviewed indicate that it's clear that he needs mental health treatment. That he is easily provoked, that he will stand up for himself, and . . . that can lead to consequences. But the [c]ourt will note that the treatment does not have to be court ordered. If somebody recognizes they have issues that need attention you can get those issues addressed. [Appellant] was concerned that seeking treatment may affect his second amendment rights, I understand that, but [Appellant] is a prohibited person by reason of his previous assault convictions. So, regardless of his mental health status . . . , he is prohibited from possessing firearms or ammunition.

The court then observed that in sentencing a defendant, the court was obligated to look at the details and circumstances of a defendant holistically, and stated the following:

[S]entencing is not a snapshot, it should never be a snapshot. If a crime is horrific . . . , it is still the obligation of the [c]ourt to look at everything that led to the crime, the background of the [d]efendant . . . , certainly the interest

40

of the community, so rather th[a]n look at the snapshot we look at the photo album. And the photo album with respect to [Appellant] is that he presents an existential threat to anyone in the community that provokes him easily. This was a case about [s]ix [d]ollars . . . and it may be that [Appellant] had a beef, I don't know but . . . nowhere is it permitted that if we have a beef with somebody about . . . a financial matter that we punch them. We had two individuals who are working mostly at minimum wage trying to get by, and they . . . encounter [Appellant] who was upset and . . . the video showed that he without provocation, without legal justification . . . , proceeded to punch these individuals.

The court then sentenced Appellant to ten years for each assault conviction, to run consecutively. After noting various deadlines Appellant had to request a review or modification, the court explained its basis for exceeding the guidelines:

The [c]ourt did exceed the guidelines in this matter, because the [c]ourt finds that based on the history of [Appellant] and extensive history of assaultive behavior, and behavior to those in authority and probation violations he is not amenable to rehabilitation or treatment . . . , and there[]fore incarceration is the appropriate result.

## B. Party Contentions

Appellant asserts that the trial court relied upon improper considerations when sentencing Appellant. He also suggests that the court was required to consider, yet ignored, mitigating factors. Appellant contends that if the sentences are not vacated, fundamental fairness dictates that the sentences merge. He also argues that the imposition of the maximum penalty for each conviction and imposing those sentences consecutively violates constitutional prohibitions against cruel and unusual punishment and is disproportionate to the seriousness of the offenses.

The State asserts that the court did not rely on inaccurate or improper information when sentencing Appellant. The State posits that the court was not required to accept

41

Appellant's argument in favor of mitigation; nor was it required to follow the recommendations of the pre-sentence investigator. The State notes that the statements relied upon by Appellant as evidence of the trial court's alleged bias were in fact permissible commentary on the conduct for which Appellant was convicted. The State contends that Appellant's fundamental fairness claim is unpreserved, and if considered, notes that Appellant did not present any reason why convictions for two assaults on two separate victims should merge. The State further claims there is nothing cruel or unusual with running sentences consecutively when the length of each sentence is within the statutory limits. Last, the State contends that the sentence is not grossly disproportionate.

## C. Analysis

"Generally, 'we review sentences only to determine whether the sentence is within statutory limitations, whether the sentencing judge was motivated by ill-will, prejudice, or other impermissible considerations, whether the sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, and whether the sentence violates any other constitutional provisions.'" *Nensala v. State*, 268 Md. App. 519, 567 (2026) (quoting *Lopez v. State*, 458 Md. 164, 179 (2018)). A trial court is vested with "wide discretion in fashioning a defendant's sentence." *Sharp v. State*, 446 Md. 669, 685 (2016) (citation omitted). Accordingly, appellate courts generally review "for abuse of discretion a trial court's decision as to a defendant's sentence." *Nensala*, 268 Md. App. at 567 (quoting *Sharp*, 446 Md. at 685).

42

### i.     The sentencing court's considerations

In conducting a review of a challenge to a sentence based on an allegation of improper considerations, we "must read the trial court's statements in the context of the entire sentencing proceeding to determine whether the trial court's statements could lead a reasonable person to infer that the trial court might have been motivated by an impermissible consideration." *Jackson v. State*, 230 Md. App. 450, 470 (2016) (quoting *Sharp*, 446 Md. at 689) (internal quotation marks, brackets, and further citation omitted); *see also Townes v. State*, 264 Md. App. 500, 510 (2025) ("[W]e examine the entirety of the judge's comments at sentencing and consider the challenged comments in that context.") (citation omitted). "Under Maryland Rule 8-131(a), a defendant must object to preserve for appellate review an issue as to a trial court's impermissible considerations during a sentencing proceeding." *Nensala*, 268 Md. App. at 568 (quoting *Sharp*, 446 Md. at 683).

"[A] judge may not impose a sentence out of ill-will, prejudice, or other impermissible considerations." *Reyes v. State*, 492 Md. 630, 642 n.6 (2025) (citing *Jackson v. State*, 364 Md. 192, 200 (2001)) (quotation marks and brackets omitted). Impermissible considerations have been held to include punishment for a defendant exercising rights granted by our system of justice, such as the right to a *de novo* appeal, the right to plead not guilty, and the right to decline a plea deal. *See Abdul-Maleek v. State*, 436 Md. 59, 73–74 (2012); *Sharp*, 446 Md. at 686; *Johnson v. State*, 274 Md. 536, 544–45 (1975). However, a sentencing judge "should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his

43

or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Jackson*, 230 Md. App. at 470 (quoting *Jackson*, 364 Md. at 199) (further citation omitted). Moreover, "a sentencing judge may properly consider uncharged or untried offenses." *Id.* (quoting *Smith v. State*, 308 Md. 162, 172 (1986)).

On appeal, Appellant presents a myriad of considerations he contends the court considered which he argues were impermissible; he also suggests the court was required to accept Appellant's mitigation argument. He further identifies isolated statements of the court and observations from other proceedings in the circuit court which Appellant claims demonstrate bias.

We first examine Appellant's claim that the court's sentence impermissibly considered information that was not factual—namely, the State's representation that Appellant's convictions in this case would be the "fifth and sixth conviction of [Appellant] for assault in the second degree." Appellant suggests that the court should not have considered his criminal record, and that the judge "inaccurately read and relied on wrong information and improper information." The record containing the sentencing court's findings does not suggest the court accepted the State's representation regarding Appellant's prior assault convictions; instead, the court thoroughly discussed the information included in the pre-sentencing investigation report—a report that Appellant did not object to—in fashioning the sentence. In addition, the court's consideration of Appellant's background, history, and prior offenses was not impermissible. *See Jackson*, 230 Md. App. at 470 ("[A] judge should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his

44

or her reputation, *prior offenses*, health, habits, mental and moral propensities, and social background.") (emphasis added) (further citation omitted).

Appellant next contends that the State's discussion of Appellant's unproven conduct of sitting across the street from the Royal Farms—which the State characterized as an attempt to intimidate witnesses—was improper. The record of sentencing does not suggest the court considered the State's representation regarding the conduct of Appellant in fashioning a sentence. The court's analysis, as reflected in the hearing transcript, focused on the matters discussed in the pre-sentencing investigation report, Appellant's allocution, and the facts surrounding the convictions in this matter. As the court did not refer to the alleged instance of Appellant sitting across the street from the Royal Farms, we are not persuaded that the court considered this conduct in sentencing Appellant and thus do not further address this issue. *See Jackson*, 230 Md. App. at 471–72 (holding that while consideration of reliable evidence surrounding an acquittal would have been acceptable, there was no evidence that the sentencing court considered such evidence where it never mentioned the acquittal in the explicitly stated reasons identified supporting the sentence). "Accordingly, we are not convinced that a reasonable person would infer that the sentencing court was motivated by an impermissible consideration." *See id.* at 472.[28]

---

[28] Because we have determined that the record does not reflect that the sentencing court considered the State's assertions regarding Appellant's conduct outside the Royal Farms, we do not reach the hypothetical question of whether such consideration would have been impermissible. *See Estate of Brown v. Ward*, 261 Md. App. 385, 458 (2024) ("This Court's role is to review judgments, not to decide moot or academic questions."); *Furda v. State*, 193 Md. App. 371, 401 (2010) (citations and quotation marks omitted) ("[A]ppellate courts do not sit to give opinions on abstract propositions or moot questions.").

We next turn to Appellant's contention that the court ignored "the mental health issues and issues related to Appellant's race that have plagued him[,]" as well as Appellant's amenability to treatment. We do not agree that this is the case. While a trial judge must consider mitigating evidence when it is offered, it is not required to accept such evidence. *Jones v. State*, 414 Md. 686, 701 (2010). Here, the court considered Appellant's allocution and request for mental health treatment and identified Appellant's allocution as one of its considerations at the beginning of sentencing. The court, however, was not required to accept Appellant's statement that he would be a candidate amenable to mental health treatment. *See id.* Indeed, it is clear that the court did not accept Appellant's representation in this regard, as demonstrated by the court's recounting of Appellant's failure to obtain mental health treatment, either as part of prior court direction or of Appellant's own volition. That the court declined to find Appellant's mitigation argument persuasive does not amount to an impermissible consideration.

Finally, Appellant argues that the court's sentence reflected bias towards Appellant as exemplified by several isolated remarks. Appellant takes issue with two of the court's statements: first, that Appellant "is easily provoked, that he will stand up for himself, and . . . that can lead to consequences"; and second, that "the photo album with respect to [Appellant] is that he presents an existential threat to anyone in the community that provokes him easily." Appellant claims that neither statement was supported by evidence at trial or the pre-sentence investigation report.

In conducting a review of a challenge to a sentence based on an allegation of improper considerations, we "must read the trial court's statements *in the context of the*

46

*entire sentencing proceeding* to determine whether the trial court's statements could lead a reasonable person to infer that the trial court might have been motivated by an impermissible consideration." *Jackson*, 230 Md. App. at 470 (emphasis added) (internal brackets, quotation marks, and further citation omitted).

Here, the court's statement regarding Appellant being easily provoked, which can lead to consequences, was made in the context of the court's summary of the remarks made by Appellant's family members during the pre-sentence investigation. The court's statement regarding Appellant presenting an existential threat to anyone who provokes him easily was immediately followed by the court's commentary that the dispute in this case was over six dollars. The pre-sentence investigation report supports each of the court's statements; several of Appellant's family and friends acknowledged that Appellant "does have a short[] fuse"; that he "hold[s] a lot of anger"; that he "will always defend himself if he feels threatened or attacked"; that "[Appellant's] moods can change very quickly"; and that "sometimes [Appellant] gets a little too angry and doesn't always think things through." In addition, the evidence adduced at trial supports the court's commentary that Appellant grew provoked and frustrated over the minuscule amount of six dollars and assaulted the two Royal Farms employees over this trivial sum.

Viewed in the context of the entire sentencing proceeding, we are not convinced that the trial court's statements could lead a reasonable person to infer that the trial court might have been motivated by an impermissible consideration. *See Jackson*, 230 Md. App. at 470.

*ii.    Fundamental fairness*

"Typically, arguments not raised during sentencing determinations are not preserved on appeal and are considered waived." *Koushall v. State*, 249 Md. App. 717, 737 (2021), *aff'd*, 479 Md. 124 (2022) (citing *Bryant v. State*, 436 Md. 653, 660 (2014)). This is because under Maryland Rule 8-131(a), this Court ordinarily "will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" *Id.* An exception to the preservation requirement exists when a defendant contends that a sentence is illegal under Maryland Rule 4-345(a), as a motion to correct an illegal sentence under that rule may be raised at any time. *Koushall*, 249 Md. App. at 737. "A sentence that should have merged based on required evidence or the rule of lenity is considered to be an illegal sentence under Rule 4-345(a)." *Id.* (citing *Pair v. State*, 202 Md. App. 617, 624 (2011)). However, an argument for merger based on fundamental fairness "does not enjoy the procedural dispensation of Md. Rule 4-325(a)" because "fundamental fairness is not an inherently illegal sentence within the tightly limited contemplation of the rule." *Koushall*, 479 Md. at 163 (quoting *Koushall*, 249 Md. App. at 737, 737 n.6) (brackets and further citation omitted).

Here, Appellant did not raise the issue of merger at the sentencing hearing; nor did he raise before the sentencing judge an argument that his sentences should be merged based on the doctrine of fundamental fairness. Accordingly, the argument is unpreserved. *See* Md. Rule 8-131(a). Because Appellant's sentences are within the legal limitations, there is nothing "inherently illegal" about the sentences that would allow Appellant to pursue the fundamental fairness argument through the procedural benefit of Maryland Rule 4-325(a).

48

*See Koushall*, 479 Md. at 163. Accordingly, we do not review this argument as it is

unpreserved.

    *iii.    Proportionality*

> The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." Similarly, Article 25 of the Maryland Declaration of Rights provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." Finally, Article 16 of the Maryland Declaration of Rights provides "[t]hat sanguinary Laws ought to be avoided as far as is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter."

*Howard v. State*, 232 Md. App. 125, 174 (2017) (quoting *State v. Stewart*, 368 Md. 26, 31

(2002)) (alterations in original).

"The Eighth Amendment encompasses a narrow proportionality principle

prohibiting 'grossly disproportionate' sentences." *Harris v. State*, 251 Md. App. 612, 657

(2021), *aff'd*, 479 Md. 84 (2022) (citing *Stewart*, 368 Md. at 31) (further citation omitted).

"Successful challenges on this ground are 'exceedingly rare.'" *Id.* (citation omitted).[29]

"[T]he Eighth Amendment does not require strict proportionality between crime and

sentence. Rather[,] it forbids only extreme sentences that are 'grossly disproportionate' to

the crime." *Harris*, 479 Md. at 122 (quoting *Stewart*, 368 Md. at 32).

---

[29] A challenge to the legality of a sentence pursuant to the Eighth Amendment is cognizable as a claim of an illegal sentence and may be raised at any time. *Harris*, 251 Md. App. at 657–58 (citing *Randall Book Corp. v. State*, 316 Md. 315, 322 (1989) and *Hartless v. State*, 241 Md. App. 77, 84–85 (2019)). Therefore, although Appellant did not raise before the sentencing court the issue of whether his sentence violated the Eighth Amendment, the issue is properly before this Court.

Maryland appellate courts employ a two-step process in evaluating claims of gross disproportionality.

> A reviewing court must first determine whether the sentence appears to be grossly disproportionate. In so doing, the court should look to the seriousness of the conduct involved, the seriousness of any relevant past conduct, any articulated purpose supporting the sentence, and the importance of deferring to the General Assembly and to the sentencing court.

> If these considerations do not lead to a suggestion of gross disproportionality, the review is at an end. If the sentence does appear to be grossly disproportionate, the court should engage in a more detailed *Solem-*type analysis.[30]

*Id.* (brackets and ellipses omitted) (quoting *Thomas v. State*, 333 Md. 84, 95 (1993)).

Here, Appellant's conduct "plainly was serious in nature." *See Howard*, 232 Md. App. at 176. Appellant resorted to solving a minor problem involving a six-dollar refund by punching two individuals without, as the sentencing court noted, provocation or legal justification. It took both victims and the intervention of a third individual to remove Appellant from the store in order to have him disengage.

In addition, the sentencing court took into account Appellant's history of prior convictions for second-degree assaults. The court noted that for at least two of these convictions, Appellant was given probation with a condition that he complete anger

---

[30] *See Thomas v. State*, 333 Md. 84, 93 (1993) (quoting *Solem v. Helm*, 463 U.S. 277, 290, 292 (1983)) (noting that while a "court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions[,]" reviewing courts should "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals").

management classes or mental health treatment. However, Appellant did not complete these requirements, thereby violating his probation. The court further observed that the purpose in sentencing Appellant was to achieve the goals of deterrence, rehabilitation if possible, and public safety. The court noted that Appellant had been given opportunities and direction by previous courts to complete anger management and mental health treatment, and had not done so; moreover, the court noted that individuals need not wait for court involvement to address known mental health issues. The court also acknowledged Appellant's recognition that he needed to address his mental health issues, yet had not done so out of concern that his Second Amendment rights would be affected—a concern that the court noted was misplaced in light of Appellant's previous convictions. The court highlighted that its sentence was greater than the recommended guidelines; however, the court indicated that it did so because Appellant was "not amenable to rehabilitation or treatment" based upon his "extensive history of assaultive behavior" as well as his behavior towards those in authority and his probation violations. In articulating the purpose supporting the sentence, the sentencing court is entitled to deference. *See Howard*, 232 Md. App. at 177 (quoting *Thomas*, 333 Md. at 97) ("[W]e give great deference to the sentencing court, which 'is virtually always better informed of the particular circumstances.'").

Appellant's conduct in this case was serious, and he had a lengthy history of second-degree assault convictions as well as probation violations. Moreover, the sentencing court articulated the basis for the sentence based on Appellant's capacity for rehabilitation. As these factors do not suggest gross disproportionality in Appellant's sentence, our review is at an end. *See Harris*, 479 Md. at 123 (citing *Thomas*, 333 Md. at 95).

**JUDGMENTS OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**